RAY WATSON AND LAURA WATSON, HUSBAND AND WIFE, PLAINTIFFS AND RESPONDENTS, v. W. A. BARNARD, A SINGLE MAN, LUCY W. ARNOTT, A MARRIED WOMAN, AND VIRGINIA LEE KOSS, A MARRIED WOMAN, DEFENDANTS AND APPELLANTS.

No. 11669.
Submitted February 10, 1970.
Decided March 25, 1970.
Rehearing Denied June 15, 1970.
469 P.2d 539.

76

Morrison & Ettien, Havre, J. Chan Ettien, Havre, argued, for defendants-appellants.

Jess L. Angstman, Hauge, Hauge, Ober & Spangelo, Havre, Waldo N. Spangelo, Havre, argued, for plaintiffs-respondents.

THE HONORABLE ROBERT C. SYKES, District Judge, sitting in place of MR. JUSTICE BONNER, delivered the Opinion of the Court.

The subject matter of this action is a tract of land known as Werginz Meadows, approximately 1,820 acres purchased by plaintiff Watson and defendant Barnard in 1951. Plaintiff

had leased same and lived on it since 1943 and used it as the base of a cattle operation in the South Phillips Cooperative State Grazing District. At the time of purchase (each paying equal amounts) plaintiff continued to live on the tract and continued his cattle operation and made the same payment as he had prior to purchase—¼ hay crop—excepting he paid Barnard. After the purchase plaintiff acquired other lands through lease or purchase. Differences arose between the parties; in 1965 the parties divided the tract, plaintiffs to become sole owners of about 936 acres and defendant Barnard and his daughters, Mrs. Arnott and Mrs. Koss, of about 886 acres. A controversy as to the values of the respective tracts and water rights resulted in the parties executing a type-written agreement, duly acknowledged. Attached to the type-written agreement was a handwritten agreement signed by the parties, submitting the controversy as to value to a board of arbitrators.

The issue in this case is whether or not the plaintiffs owe defendants anything for range rights, using the Werginz Meadows as a base for Bureau of Land Management lands.

By the agreement the board of arbitrators was to place a value upon the tract to be owned by each. It further provided that any difference in greater value was to be paid to the other.

As to the range rights, the final paragraph of the type-written agreement reads as follows:

"IT IS FURTHER AGREED by and between the parties hereto that the parties of the second part herein shall receive all of the animal units which are granted by the Bureau of Land Management or the Grazing District *using the above described lands as a base* and the Board of Arbitrators in arriving at a value as to the respective lands to be received by the parties hereto shall in making their computation consider the fact that the parties of the second part shall

receive all grazing privileges which are appurtenant to the lands herein described." (Emphasis added.)

The first paragraph of the handwritten agreement reads as follows:

"The range rights for the Tony Werginz meadow were considered to be fifty head and that is the number that we agree for the appraisers to take into consideration in their appraisal of the above mentioned lands."

Both agreements also contained provisions as to water rights, and excluded from the valuation various improvements that plaintiffs had made on their portion.

The board of arbitrators or "appraisers" submitted an appraisal, dated October 1, 1965, placing a value on plaintiffs' land; a value on defendants' land; and, in addition a value as to defendants' equity in an artesian well retained by plaintiffs, which existed at date of purchase.

The board of arbitrators concluded with the following paragraph:

"With regard to any range rights, it is the unanimous opinion of your appraisers that Ray Watson should pay for them to the Barnard-Koss-Arnott contingent at the rate of $250.00 per right if and when the Bureau of Land Management shall establish that they, the Barnard-Koss-Arnott contingent, have any equity in range rights established or accruing from the Werginz land."

Plaintiffs brought suit for specific performance offering to pay defendants the sum of $473.40, the difference in value determined by the appraisers; and alleged that the Bureau of Land Management had determined that there were no grazing privileges based upon or appurtenant to the lands hereinbefore described. Defendants filed a cross-claim demanding the additional sum of $6,250, one-half of the appraised value of $250 per head on 50 head, alleging this constituted the agreed number of animal units granted by the Bureau of Land Management using the entire tract as a base. Defendants further

contend that the board of arbitrators had no authority to determine the question of range rights, but only to determine the value of the 50 head as agreed to by the parties.

Reference to "grazing rights", "privileges", "animal units", "class one rights", relate to the use of public domain administered by state grazing districts or the Bureau of Land Management under the Taylor Grazing Act. 43 U.S.C.A. § 315 et seq. This Act was enacted in 1934 by Congress to provide for conservative and orderly use of federal range lands.

To carry out the purposes of the act, the Secretary of the Interior, through the Bureau of Land Management, promulgated regulations governing the use of public domain called "The Federal Range Code". The Range Code has been expanded over the years and is now found at 43 Code of Federal Regulations, Sections 4110.0-2 et seq. Under the Act and Range Code, grazing preferences were set up based on location and use of "base" properties in connection with available federal and other lands.

The Taylor Grazing Act, among other things, authorizes the Secretary of the Interior to establish grazing districts on certain parts of the public domain, to make such rules and regulations and to enter such cooperative agreements as might be required and to issue permits to graze livestock to those entitled under the Secretary's regulations to use the range. The act provides that a preference in the award of grazing privileges be granted among others to land owners engaged in the livestock business.

Montana Grazing District No. 1 was established by the Secretary of Interior on July 11, 1935. However, because of the scarcity of public domain in said district and the intermingling of state, private and non-public domain lands, the Secretary entered into a cooperative agreement with the South Phillips Cooperative State Grazing District whereby that district was administered by that body from April 9, 1936 to November 24, 1952, at which time the Department of Interior assumed

administration of said district. A subsequent Special Rule II changed the priority period to 1954-1958 involving the Werginz Meadows and other lands in the district.

Originally, class one preferences were conditioned to a timely application showing use as a part of an established permanent and continuous livestock operation for any two consecutive years or any two of any three years of the 1929-1934 priority period. 43 C.F.R., Section 4110.0-5(k) (1).

Livestock ranching is important to the economy of Montana. This Court recognizes that contiguous federal range increases the value of deeded base holdings. Ivins v. Hardy, 134 Mont. 445, 453, 333 P.2d 471, 334 P.2d 721. It would appear that the Federal Range Code was established to encourage and maintain continuous operations.

Apparently the district court held that when plaintiffs fenced other deeded lands they owned together with certain Bureau of Land Management land, the grazing rights of plaintiffs were "attached and appurtenant thereto" and as a result any rights pertaining to the Werginz Meadows (which were not in the fenced area) were lost.

The evidence shows that only 50 Class I rights were recognized by the South Phillips Cooperative Grazing District or Bureau of Land Management from 1943 to 1966, and that all others granted to plaintiffs were temporary, varying each year. Plaintiffs' Exhibit "C" is a letter, dated September 14, 1967, from Mr. Nyles L. Humphrey, Malta district manager for the Bureau of Land Management. It reads as follows:

"1. *The Werginz base property* supporting Class I grazing privileges in the Malta District was *properly offered* in an application for grazing privileges by Ray Watson on July 28, 1966, and specifically contains 936 acres with a present commensurability rating of 1,181 AUMs.

"2. *Priority records* obtained from the files of the South Phillips Cooperative State Grazing District indicate the Fed-

eral range use area (allotment) was allocated exclusively to Ray Watson.

*"Based on the above information, an* initial recommendation and proposed decision dated December 9, 1966 was issued to Ray Wilson adjudicating the grazing privileges. A protest was submitted on this action and a final decision was issued January 18, 1967 sustaining the initial recommendation. This final decision was appealed and automatically suspended all further action on adjudication of any grazing privileges for Ray Watson.

"In addition to the Watson application for grazing privileges, one was received from Mrs. Lucy Arnott and Mrs. Virginia Koss dated October 17, 1966. This application also offered the same base property plus an additional 886 acres with a commensurability rating of 1,702 AUMs. This application was rejected by adverse recommendation and proposed decision dated December 6, 1966. The notice was then protested and a final recommendation and decision was issued. No appeal resulted. By not appealing the final decision, Mrs. Arnott and Mrs. Koss negated their claim for grazing in this allotment.

"There is no final adjudication of the Federal range grazing privileges for this unit because of your pending appeal. Your questions would be more definitely answered after your appeal is settled either by withddrawal or final decision." (Emphasis added.)

Exhibit "C" refers to Special Rule II which was put into effect January 20, 1966; also to plaintiffs' application July 28, 1966—almost a year after the date of the agreement. Attached to Exhibit "C" were recommendations increasing plaintiffs' Class I rights to 74 in 1967.

Since plaintiffs contend *base rights* were on lands other than the Werginz Meadows, the burden was that of plaintiffs' to prove same. Section 93-1501-1, R.C.M.1947 provides:

*"Evidence to be produced, by whom.* The party holding the affirmative of the issue must produce the evidence to prove it; therefore, the burden of proof lies on the party who would be defeated if no evidence were given on either side."

█ Since the Range Code required priority rights to qualify for adjudication under Special Rule II, the district court properly admitted plaintiffs' Exhibit "C"—but solely to show such priority—and it shows priority based on the Werginz Meadows.

As to what plaintiffs or defendants did or did not do concerning adjudication of range rights to their lands as divided by the agreement was irrelevant to the issue raised in the case—value of range rights pertaining to the original Werginz acreage as divided by agreement of the parties.

█ Nowhere is there any evidence showing any priority (Class I rights) existing on any other lands that plaintiffs had an interest in. By plaintiffs failing to produce such evidence, their claim of same fails.

█ Unless an ambiguity exists in the agreement, the parties are bound by the agreement, and prevented from submitting parole evidence contrary thereto. This Court, in Williams v. Ins. Co. of North America, 150 Mont. 292, 295, 434 P.2d 395, 397 said:

"* * * Ambiguity does not exist just because a claimant says so, but only when the contract taken as a whole in its wording or phraseology is reasonably subject to two different interpretations. If the intention of the parties is clear from the language of the contract this intention is to be carried out. Courts have no authority to change the contract, or to disregard the express language used."

An examination of the typewritten and handwritten agreements signed by the parties relating to grazing rights shows the following:

1. "* * * The Board of Arbitrators in arriving at a *value* as to the respective lands to be received by the parties

hereto shall in making their computation consider the fact that the parties of the second part shall receive all grazing privileges which are appurtenant to the lands herein described."

2. "The range rights for the Tony Werginz Meadows were considered to be fifty head and that is the number that we *agree* for the appraisers to take into consideration in their appraisal of the above mentioned lands." (Emphasis added.)

■ The agreements make no mention of what kind of rights—whether Class I, Class II or temporary. No mention is made of a controversy of number of rights, just *value*. The intent of the parties by the agreements was to limit valuation of the grazing rights which plaintiffs retained to 50 head. The agreements were signed because the parties agreed there were *base* range rights, that they had a separate and distinct value, and considered of 50 such rights. It is our opinion this was permissible by contract, and was subsequently recognized by the Bureau of Land Management (plaintiffs' Exhibit "C"). It is our opinion that there existed no ambiguity permitting plaintiffs' testimony to the contrary.

■ By virtue of the agreements and the evidence, the defendants are entitled to have the value of one-half the grazing privileges, $6,250; the district court decision is reversed, and it is directed to amend its findings of fact and conclusions of law herewith, with judgment for defendants as herein indicated.

MR. JUSTICES CASTLES, JOHN CONWAY HARRISON, and HASWELL, and THE HONORABLE PAUL G. HATFIELD, sitting in place of MR. CHIEF JUSTICE JAMES T. HARRISON, concur.