No. 13422

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

S-W COMPANY,

Plaintiff and Respondent,

-vs-

FRED E. SCHWENK, JR., PACIFIC
NATIONAL BANK OF WASHINGTON and
SHELL OIL COMPANY,

Defendants and Appellants.

Appeal from:  District Court of the Sixteenth Judicial District,
Honorable Alfred B. Coate, Judge presiding.

Counsel of Record:

For Appellants:

Denzil R. Young argued, Baker, Montana
Moulton, Bellingham, Longo & Mather, Billings, Montana

For Respondent:

Berger, Anderson, Sinclair and Murphy, Billings,
Montana
Arnold Berger argued, Billings, Montana

For Amicus Curiae:

Fillner and Pitet, Billings, Montana
Patrick Pitet argued, Billings, Montana

Submitted:   May 31, 1977

Decided: AUG 1

Filed:  AUG 17 1977

_____
Thomas & Karney
                              Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Fred E. Schwenk, Jr., appeals from an order of the district court granting summary judgment for S-W Company and from the denial of the district court to amend the court's findings of fact and conclusions of law.

The action is on a contract involving interests in land in Fallon County. S-W Company, a promisor to the contract, brought the action against Schwenk, Pacific National Bank of Washington and Shell Oil Company, promisees. The latter two parties are stakeholders who do not join Schwenk on appeal. John Wight was a co-promisor on the contract. He was not made a party to the action but filed a brief on leave of this Court as amicus curiae on appeal after receiving notice of the judgment of the district court. On appeal Wight requests joinder as an interested party to the action.

In settlement of a former dispute, Schwenk agreed to accept the sum of $15,000 as full payment to him for his interest in the particular lands described in the agreement with S-W Company and Wight. The agreement stated:

> "First Party [Schwenk] shall accept the sum of Fifteen Thousand ($15,000.00) Dollars as full payment to him for his right, title, interest and claims in to the above described lands and working interest embracing those lands, which shall be paid in the following manner: One-half of the net proceeds derived by S-W Company from its working interest in and to said lands, and one-half of the net proceeds to be derived from the Wight Trust interest held by the First National Bank of Denver embracing the said described lands." (Bracketed material added.)

According to the agreement, instruments regarding the interests in the land were to be held in escrow and delivered to S-W Company "when the terms and conditions of this agreement and the escrow agreement have been complied with fully."

Shell Oil, the producer of oil from the lands, later made monthly payments towards the $15,000 debt, applying one-half the

monthly income of S-W Company. Wight Trust funds, meanwhile, were indefinitely impounded by another unrelated lawsuit. When more than $7,500 had been paid to Schwenk by income from S-W Company, S-W Company sued Schwenk, the Bank and Shell Oil alleging that it had fulfilled its obligations of the agreement. Schwenk answered, alleging that the agreement did not limit S-W Company's obligation to one-half of the $15,000 debt, and that instead, S-W Company was jointly and severally liable for the whole amount. Wight, the cosigner on the debt, was not joined or notified of the proceedings until after judgment. Neither party to the action nor the court raised the question of joinder prior to appeal.

The only evidence submitted to the court for interpretation was a copy of the agreement itself. The trial court granted a motion of S-W Company ruling that the language in dispute was not ambiguous and accordingly that S-W Company was liable to pay only $7,500 of the $15,000 debt. After the trial court refused to amend any of its findings and conclusions, Schwenk appealed from the granting of the summary judgment.

Schwenk's appeal raises three main issues:

1. Was the district court in error in determining there was no ambiguity in the contract?

2. Did issues of fact exist which precluded the granting of summary judgment?

3. Should the district court have required the joinder of Wight as an interested party whose interests were affected by the judgment?

If the district court was correct in determining that the disputed language was not ambiguous, it would follow that there were no material questions of fact as to the liability of S-W Company. However, we determine that the language is ambiguous and accordingly that there were material facts in dispute.

-3-

Where ambiguity does exist on the face of the contract, the question of the parties' intent as to the language involved is submitted to the trier of fact. Schell v. Peters, 147 Mont. 21, 410 P.2d 152. Ambiguity exists when a contract taken as a whole in its wording or phraseology is reasonably subject to two different interpretations. Watson v. Barnard, 155 Mont. 75, 82, 469 P.2d 539. Here, the crux of the case is whether S-W Company is jointly and severally liable for the total $15,000 debt, or only severally liable for half, $7,500. The only language in the agreement relating to liability is phrased in terms of the source of funds to pay the debt:

> "One-half of the net proceeds derived by S-W Company from its working interest in and to said lands, and one-half of the net proceeds to be derived from the Wight Trust interest * * * ."

What was meant by this language? Does it mean that the S-W Company is liable to pay only $7,500 as the trial court held, or does it mean that one-half of the net proceeds (however large or small that amount may be) of the S-W Company's working interest in the land involved, shall go towards payment of the $15,000 debt? Similarly, does it mean that one-half of the net proceeds of the Wight Trust (however large or small that amount may be) shall go towards payment of the $15,000 debt? We cannot conclude as a matter of law that the meaning of this contract language was clearly stated or unambiguous.

Nowhere in the agreement is the extent of each promisor's liability defined other than to the extent of one-half of each source of income. There are no time limitations, furthermore, on payment from either S-W Company or Wight Trust; documents in escrow were to be released only after the agreement was fully performed.

Under Montana law, obligations imposed upon several persons may be (1) joint, (2) several, or, (3) joint and several. Section 58-201, R.C.M. 1947. Section 58-202, R.C.M. 1947, states:

-4-

> "When joint and several. All joint obligations
> and covenants shall hereafter be taken and held to
> be joint and several obligations and covenants."

Sections on the interpretation of contracts, sections 13-725 and

13-726, R.C.M. 1947, raise the presumption of joint and several

liability. They provide:

> "13-725. Where all the parties who unite in a
> promise receive some benefit from the consideration,
> whether past or present, their promise is presumed
> to be joint and several."

> "13-726. A promise, made in the singular number,
> but executed by several persons, is presumed to be
> joint and several."

These sections correspond directly with their California predeces-

sors and present counterparts, sections 1659 and 1660, Cal.Civ.C.

1954.

No Montana cases are clearly on point here. California

courts, however, have made numerous distinctions regarding these

statutes. In a recent case, Vincent v. Grayson, 106 Cal.Rptr. 733,

738, 30 C.A.3d 899, 906, the court stated that the language of

"'I/We hereby promise and agree to pay * * *'" imparts joint and

several liability. In Kaneko v. Okuda, 15 Cal.Rptr. 792, 195 C.A.2d

217, the court held that three signers of a contract and option to

purchase had benefited from the consideration and hence were liable

jointly and severally. In Williams v. Reed, 113 C.A.2d 195, 248

P.2d 147, the court held comakers of a mortgage liable jointly and

severally when each note was in the form of a promise made in the

singular and executed by each of the makers. Finally, in Olson v.

Foster, 42 C.A.2d 493, 109 P.2d 388, the court held that a number

of trusts were jointly and severally liable for the balance due on

legal services made on behalf of and benefiting all of the trusts.

In the present case, there is no language expressly defining

the liabilities of the two promisors. There is no language compa-

rable to "I/We agree * * *". The debt, however, is named as a total

$15,000, and nowhere is it explicitly broken down into two halves

of $7,500 each. It is not clear what benefit each of the promisors received from the agreement, but it specifically stated that the $15,000 was to be satisfaction of an earlier "disagreement between all of the parties." What relationship the promisors each had to the earlier disagreement, or to each other, is not apparent from the papers or the court files. A prior debt, however, is sufficient to constitute consideration in a later promise regarding that debt, sections 13-501 and 13-502, R.C.M. 1947, and both promisors here received a benefit from the contract. These facts raise the presumption of joint and several liability of each promisor, and as a matter of law, Schwenk is entitled to this presumption. The burden of proof is on S-W Company to rebut this presumption.

When a contract is ambiguous, the language of the parties must be considered in light of subject matter and the surrounding circumstances, as well as the positions of the parties at the time the contract was made. Kintner v. Harr, 146 Mont. 461, 408 P.2d 487; McNussen v. Graybeal, 146 Mont. 173, 405 P.2d 447. The construction that the district court gave to the language was just one of many constructions which could reasonably be given it. The district court erred in determining that there was no ambiguity in the contract.

It follows that the court erred in granting summary judgment for S-W Company. This Court stated in Fulton v. Clark, 167 Mont. 399, 404, 538 P.2d 1371, "Summary judgment is usually inappropriate where the intent of the contracting parties is an important consideration." 6 Moore's Federal Practice, Para. 56.17[41.-1]. In Fulton the contract did not specifically provide for the payment of the fees in question. The Court stated:

> " * * * To determine if the agreement precludes management fees for long range services, the district court must inquire as to the conduct of the parties and as to the existence and substance of the alleged oral agreement. Whether there was

-6-

an executed oral agreement, as well as whether
the conduct of the parties modified the written
agreement, are material questions of fact bear-
ing on the intent of the parties. * * * "
167 Mont. 404.

Similarly, here the contract does not state the extent of liability

of each promisor. The intent of the parties to the contract is a

genuine issue of fact and hence summary judgment is inappropriate.

The following considerations for example, would have been

appropriate inquiry for the trial court to arrive at the facts.

Which party was the source of the language used in the agreement

regarding how payment of the debt was to be made and how and why

was this language chosen? What interests, if any, did each of the

promisors to the agreement, namely S-W Company and John Wight or

his predecessor in interest, have in the prior dispute upon which

the agreement was based? What were the income-producing capacities

of each of the two parcels of land in which the promisors owned

interests at the time of the agreement, and was this information

within the knowledge of all parties at the time? What was the rela-

tionship between the promisors at the time of the agreement?

The remaining issue is whether Wight (the Wight Trust)

should have been joined as a party at the district court level.

Neither S-W Company nor Schwenk raised the issue of joinder before

appeal. In his amicus brief Wight claims, however, that he should

have been joined as a party, and it appears that he did not know of

the action pending in district court. Under Rule 19(a), M.R.Civ.P.,

the court is required to join a person subject to service of process

if:

"(2) he claims an interest relating to the subject
of the action and is so situated that the disposi-
tion of the action in his absence may (i) as a
practical matter impair or impede his ability to
protect that interest * * * ."

Since Wight did not claim an interest in the case below the court

was not required to join him as a party, but because his interests

would clearly have been affected by the court's judgment, the court should have joined him as a party. Under Rule 21, M.R.Civ.P., the district court may drop or add parties on motion of any party "or of its own initiative" at any time during the proceedings.

In this situation Wight was not bound by the court's conclusions of law and judgment since he was not a party. However, he would be limited in exercising his right of contribution from S-W Company on the debt if S-W's liability was decided in Wight's absence. The basis of the rule on joinder is founded on due process considerations of notice and a right to be heard. On remand Wight should be joined as a party so that he is not deprived of due process.

We reverse the summary judgment of the district court, set aside the findings of fact and conclusions of law, and order further proceedings not inconsistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

-8-