No. 82-109

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

SAS PARTNERSHIP, a partnership,
by and through WILLIAM E. STEIN,
a general partner,

Plaintiff and Appellant,

vs.

FRED F. SCHAFER AND
GAIL F. SCHAFER,

Defendants and Respondents.

Appeal from: District Court of the Eleventh Judicial District,
In and for the County of Flathead
Honorable J. M. Salansky, Judge presiding.

Counsel of Record:

For Plaintiff:

E. Eugene Atherton, Kalispell, Montana

For Defendants:

Jardine, Stephenson, Blewett & Weaver; Alexander Blewett,
Great Falls, Montana

Submitted on briefs: August 19, 1982

Decided: October 4, 1982

Filed: OCT 4 - 1982

_____
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is a contract dispute on appeal from the Eleventh Judicial District in and for the County of Flathead. At the District Court the seller, SAS Partnership, sought to require the buyers, Fred and Gail Schafer, to pay an accelerated debt under a contract for deed. The District Court entered judgment against SAS. From that judgment SAS appeals. We reverse and remand.

On December 27, 1978, three parties entered into a real estate exchange agreement; SAS Partnership, the Schafers, and Paul M. Jackson. Mr. Jackson is not a party to this action. SAS sold 3,000 feet of undeveloped lakefront property to Mr. Jackson who traded the property for other real estate then owned by the Schafers. Under the terms of the contract, the Schafers were to pay SAS a total of $1.4 million; $350,000 as a down-payment, the balance to be paid in annual installments over a period of nine years at 8¼ percent interest. At or before the closing the Schafers paid the $350,000 down payment and took possession of the property and have retained possession to the present time. Within the first year the Schafers expended over $76,000 in improvements.

The first installment payment of $100,471 became due on December 27, 1979. The Schafers were unable to make the payment. On January 14, 1980, SAS sent a notice of default to the Schafers, and failing to receive payment, SAS sent another notice on February 26, 1980, demanding payment plus a penalty charge of $10,047. The Schafers could not meet their obligations and on March 14, 1980, SAS gave notice of default and an intent to ac-celerate the entire unpaid balance. On May 13, 1980, the Schafers tendered the sum of $110,853 which represented the installment payment, the penalty charge, attorney's fees, and an escrow charge. SAS refused Schafer's tender and on May 22 filed the complaint with the District Court for specific performance; praying for judgment of the entire balance of $1,050,000 plus

interest, for the penalty of $10,047 plus interest, and for attorney's fees and costs of suit. During the pendency of this action the second installment became due on December 27, 1980. No payment was made and SAS again sent default and acceleration notices.

The central issue at the District Court involved interpretation of the contract's default clause. More specifically, as sub-issues, was SAS entitled to accelerate the payments, forcing the Schafers to immediately pay the outstanding balance of over $1,000,000; and, if SAS was within its contractual rights by demanding the entire balance, did it comply with the notice requirements of the contract?

The District Court found against SAS; however, the judgment ordered the Schafers to tender the 1979 and 1980 installments plus penalties and interest. The Schafer's obligation to make tender under the judgment was conditional; if SAS made any post-trial motions or filed an appeal, the obligation would not attach. Accordingly, to the present time no installment payments have been made.

The appellant raises the following issues for our consideration:

1. Whether the District Court erred in consideration of principles of contract interpretation?

2. Whether the District Court erred by concluding that acceleration may be tantamount to forfeiture and since courts look with disfavor on forfeitures, the contract must be construed in favor of the Schafers?

3. Whether the District Court erred in concluding that the default notices were vague and premature?

4. Whether the District Court erred by not making findings and conclusions on various instances of default?

5. Whether the District Court erred in awarding attorney's fees to the Schafers?

The first two issues are overlapping in that they question

the District Court's interpretation of the contract. We choose to discuss them as a single issue.

Initially, we note that our scope of review is such that we may consider the contract language independently. It is true that contract ambiguities are questions of fact; Dooling v. Casey (1968), 152 Mont. 267, 448 P.2d 749; S-W Company v. Schwenk (1977), 173 Mont. 481, 568 P.2d 145. This Court stated in McNussen v. Graybeal (1965), 146 Mont. 173, 186, 405 P.2d 447, 454, "where there is a conflict of testimony as to what were the intentions of the parties toward the use of the ambiguous word, determination of the true meaning is one of fact . . ." Thus, we would ordinarily be limited to the "clearly erroneous" standard of review. Rule 52(a), M.R.Civ.P. However, it is also well settled that the initial determination of whether or not an ambiguity exists is one of law. McNussen, supra. "It is a question of law for the [district] court to determine first as to whether there exists ambiguity sufficient to submit the question of intention to the trier of fact." Schell v. Peters (1966), 147 Mont. 21, 27, 410 P.2d 152, 155. Thus, the determination by the District Court that the default clause was ambiguous is a conclusion of law freely reviewable by this Court. Martin v. United States (9th Cir. 1981), 649 F.2d 701; United States Fidelity v. Newman (9th Cir. 1981), 656 F.2d 457. We do not find ambiguity in the contract and rely on our own interpretation.

The entire case revolves around the default clause. The pertinent language reads:

> "2. DEFAULT: In the event Purchaser fails or neglects to make any of the payments of principal or interest when due, or fails or neglects to perform any of the covenants Purchaser has agreed to perform, then Seller may, at their option, give a written Notice of Default, to Puchaser setting forth the default claimed by Seller. The Notice shall be sufficient if it describes the default in general terms.
>
> "(a) If within 60 days of the date of service of said Notice of Default, the Purchaser corrects and makes good the payments and obli-

gations then in default as set forth in said Notice, then Purchaser's rights under this contract shall be fully reinstated and this contract shall continue the same as if no default had occurred. Purchaser agrees to reimburse Seller for all legal expenses incurred by Seller in giving and serving the Notice of Default. The amount of such expense shall be specified in said Notice of Default and shall be paid by Purchaser at the time of correcting such default.

"(b) However, if the Purchaser fails or neglects to pay, correct, or make good such default, as set forth in said Notice, within 60 days from the date of service of said Notice, then, upon giving a further notice of 60 days, the Seller may:

"(1) Declare the entire unpaid balance due on the contract, including principal and interest, immediately due and payable. In such event, Purchaser agrees to pay Seller all costs of collection including a reasonable attorney's fee.

"(c) If the Purchaser fails to pay the entire unpaid principal balance plus accrued interest, plus all costs and reasonable attorney's fees, within the time period as set forth in the second notice of default then the Seller may at its option, without notice, either:

"(1) Proceed to enforce its rights under this contract for collection of the remaining contract balance, together with interest, and together with all costs including a reasonable attorney's fee; or

"(2) Declare this contract, immediately terminated and cancelled . . ." (Emphasis supplied.)

The vigorously contested phrase appears in section 2(b) and (1): "then, upon giving a further notice of 60 days, the Seller may: (1) Declare the entire unpaid balance due on the contract, including principal and interest, immediately due and payable."

The appellant's interpretation is this: after failure of the buyer to cure within the sixty-day period specified in 2(a), the seller may then "upon giving a further notice of 60 days" immediately declare the entire balance due. In other words, the appellant argues that the giving of the second notice and the declaration of the entire balance being due are concurrent events. As a result, the buyer must pay off the accelerated debt within the second sixty-day period and failure to do so will

result in the seller choosing his remedies under subsection 2(c).

The respondent offers another interpretation. Respondent claims that after his failure to cure the default within sixty days as specified in 2(a) he must be given another sixty-day period to cure, and only after the expiration of a second sixty-day period will the seller be allowed to declare the entire balance due. Respondent argues that the giving of notice of the second sixty-day period and the declaration of the entire balance being due are not concurrent events. The declaration can occur only after expiration of the second sixty-day period. Thus, the buyer feels entitled to two sixty-day periods to cure a default and only after expiration of 120 days will the seller be authorized to demand acceleration of the debt.

The respondent's interpretation is strained. It is obvious to us that the contract envisions only two sixty-day periods, not three. The default clause is of the "double barreled" variety. Any other interpretation is ridiculous. A key word in the phrase is the word "upon." "The words of a contract are to be understood in their ordinary and popular sense . . ." Section 28-3-501, MCA. Webster's Third New International Dictionary, at page 2518, defines "upon" as ". . .on the occasion of:  at the time of . . ." Thus, "on the occasion of" or "at the time of" giving the second sixty-day notice the seller may declare the entire balance due.

Furthermore, language in 2(c) lends support to this obvious interpretation. In pertinent part it states:  "[i]f the purchaser fails to pay the entire unpaid . . . balance . . . <u>within</u> <u>the</u> <u>time</u> <u>period</u> <u>as</u> <u>set</u> <u>forth</u> <u>in</u> <u>the</u> <u>second</u> <u>notice</u> of default then the Seller may at its option . . . enforce its rights under this contract for collection of the remaining contract balance . . ." (Emphasis added.) Even if the District Court found ambiguity in the language "upon giving a further notice of sixty days" it could easily have looked to the language of subsection (c) to resolve its difficulty. "The whole of a contract is to be taken

together so as to give effect to every part if reasonably practicable, each clause helping to interpret the other." Section 28-3-202, MCA. (Emphasis added.)

It is apparent to us that the District Court, when it rendered its judgment, had in mind the much cited maxim, "the law abhors forfeiture." We noted in Yellowstone County v. Wight (1943), 115 Mont. 411, 417-418, 145 P.2d 516, 518, that "[t]he courts have established . . . the policy . . . that both in law and in equity forfeitures are abhorred." See also Parrott v. Heller (1976), 171 Mont. 212, 557 P.2d 819. In its conclusions of law the District Court stated: "acceleration may be tantamount to forfeiture . . . Courts look with disfavor on forfeitures." The laws abhorrence with forfeiture springs from the fact that they may cause extremely harsh results. Consequently, many states have statutes which allow courts of equity to avoid the unjust results of forfeiture. Montana's statute reads:

> "Whenever by the terms of an obligation a party thereto incurs a forfeiture or a loss in the nature of a forfeiture by reason of his failure to comply with its provisions, he may be relieved therefrom upon making full compensation to the other party, except in case of a grossly negligent, willful, or fraudulent breach of duty." Section 28-1-104, MCA.

The respondent would have this Court recognize the statute's applicability to these facts. We cannot do so. The cause of action at the District Court was one for specific performance, not forfeiture. The distinction between these two remedies is clearly set forth in the default clause. With specific performance the seller is seeking to affirm or uphold the provisions of the contract; whereas in forfeiture the seller is seeking to disaffirm the contract and regain possession. We have clearly recognized this distinction before. In Glacier Campground v. Wild Rivers, Inc. (1978), 182 Mont. 389, 400, 597 P.2d 689, 695, we said:

> "The seller here is not exercising his option to declare the contract at an end. If he were to do so, then he would be precluded from

> suing to recover the purchase price or
> payments past due, for he could not reclaim
> the property under a forfeiture clause and at
> the same time recover any unpaid portion of
> the sale price."

The two remedies are mutually exclusive. Even if this were a forfeiture action the statute could not help the respondent. The statute relieves a party from forfeiture upon "making full compensation to the other party." The respondent has never offered full compensation; the entire outstanding balance. This is exactly what the appellant is seeking. In Hares v. Nelson (1981), _____ Mont. _____, 637 P.2d 19, 38 St.Rep. 2036, we held the statute inapplicable for precisely this reason.

We are not unmindful that our holding may cause the Schafer's financial hardship, but this Court cannot change the clear meaning of the contract. In Glacier Campground we quoted and approved of language from Renard v. Allen (1964), 237 Or. 406, 391 P.2d 777: "[b]y entering a decree for specific performance the court has transferred an obligation assumed by contract into a judgment." Glacier Campground, 182 Mont. at 406, 597 P.2d at 698. Likewise, our holding here does nothing more than enforce an obligation voluntarily assumed by the Schafers. The Renard case also went on to say "[i]f the purchaser does not pay this obligation, it is reasonable that the property should be sold; the lien on the property was created to insure payment if the purchaser did not pay this obligation." 237 Or. at 416, 391 P.2d at 782. Thus, we hold that it is proper for the District Court on remand to enter a decree of specific performance with a provision that if the entire balance is not paid within a specified time period the property should be sold with the net proceeds applied to satisfy the money obligation owed to SAS.

We now reach the third issue raised by appellant; whether the default notices were given in accordance with the contract. When the installment, due on December 27, 1979, was not paid, SAS sent notice of default postmarked January 14, 1980. The notice stated in part:

"You will please take notice that such agreement is in default and that the annual payment in the amount of $100,471.00 due on December 27, 1979, has not been paid. Pursuant to the terms of such agreement, SAS Partnership, by and through its attorney, is hereby giving your [sic] notice as per the terms of Paragraph 2 related to default."

The trial court concluded that the notice was "vague and failed to apprise the Schafers as to precise and exact time calculations and payment deadlines." We fail to see how it could be vague. It clearly informed the Schafers that they were in default of the 1979 installment of $100,471. The notice specifically made reference to the default clause of the contract and if the Schafers were unaware of precise "time calculations and payment deadlines" they merely had to read their contract. Furthermore, the contract states "[t]he Notice shall be sufficient if it describes the default in general terms."

On March 14, 1980, SAS sent another notice entitled: "NOTICE OF DEFAULT AND INTENT TO ACCELERATE." A portion of that notice reads:

"You have failed to correct your default of the annual payment as set forth in the original January 14, 1980, notice within 60 days from the date of such notice and pursuant to Paragraph 2(b) of such contract. The Seller, SAS Partnership, by and through its attorneys, is declaring the entire unpaid balance due and payable, together with interest, costs, penalty, and attorney's fees.

"You are hereby notified that such sums are in the following amounts:

"Principal balance to 3/14/80 . $1,155,383.99
"Daily accrual of interest. . . . . . .237.33
"Penalty as per Paragraph 2(b). . . 10,047.00
"Attorney fees. . . . . . . . . . . . . 325.00

"Such sums are due and payable within 60 days of the date of this notice."

The trial court held that the March 14, 1980, acceleration notice was premature. We again disagree. Respondents contend that the acceleration notice was mailed before the sixty-day cure period expired, making the notice defective. The contract specifies that "[s]ervice by mail shall be complete." The sixty-day period began to run on January 15, 1980, the first full day after

- 9 -

the notice was placed in the mail. Our rules of civil procedure provide the example. "In computing any period of time . . . the day of the act . . . after which the designated period of time begins to run is not to be included." Rule 6(a), M.R.Civ.P. Consequently, the buyers had seventeen days in January, twenty-nine in February, since 1980 was a leap year, and fourteen days in March for a total of sixty days to cure the default by paying the first installment. The respondents argue that they did not receive the full day of March 14 to cure. They contend that the acceleration notice should not have been sent until after midnight on March 14. According to the example provided in the rules of Civil Procedure even if the notice were mailed on March 14, the first day is not included. The notice was not effective until the next day, March 15. Thus, we have a situation where the first sixty-day period ended and the second sixty-day period began at the same time, on midnight March 14. This issue would deserve more consideration if the respondent had tried to tender payment between 5:00 p.m. and midnight on March 14. However, such is not the case. Respondent did not tender the installment until May 13, 1980, approximately two months later. It was too late then. SAS had already declared the entire balance due and properly refused the insufficient tender.

Next, appellant alleges error for the District Court's failure to make findings and conclusions on various other defaults; the Schafer's failure to pay taxes, the Schafer's failure to name SAS as co-loss payee on an insurance policy, and the Schafer's assignment without the permission of SAS. We note that the pleadings only specified the issue of assignment and the record indicates that this default had been cured at the time of trial. Also, the respondents state in their brief that all of these "alleged defaults were cured by the Schafers," and "no notice under the contract was given by SAS and such defaults have no bearing on this lawsuit . . ." Nonetheless, on remand the District Court should consider these alleged breaches in light of

the contract and determine if SAS is entitled to any damages or costs.

Finally, the appellant alleges error in the District Court's award of attorney's fees to the Schafers. The contract provides:

> "In the event either party fails to perform, comply with, or abide by each and every agreement, condition and covenant in this contract, such defaulting party shall pay all costs, charges and expenses, including reasonable attorney fees, reasonably incurred by the non-defaulting party because of such default."

The contract is clear. The nondefaulting party, SAS, is entitled to attorney's fees. The District Court erred. See, Hares v. Nelson, supra.

We reverse the District Court's judgment and remand with directions to enter a decree of specific performance in favor of the appellant, SAS. Such decree should make provision for sale of the property if the entire balance cannot be paid within a reasonable time. The District Court is further instructed to make findings regarding the other alleged breaches and of reasonable costs and attorney's fees owing to SAS.

_____
                Justice

We concur:

_____

_____

_____

_____
Justices

- 11 -