No. 88-548

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

DANIEL J. FELSKA and ADOLPH L.
SOLVIE,          Plaintiffs,

WORLD REALTY LTD., KADON MANAGEMENT
CO., LTD, YORK VENTURES, LTD., HELUND
FOREST CONSULTANTS, RONALD EDWARD LITTLE,
DONALD JOHN HENRY WILLIAMSON, et al.,
                Plaintiffs/Intervenors and Appellants,
      -vs-
BRIAN GEORGE GOULDING, and all other
persons, unknown, claiming or who might
claim any right, title, estate or interest
in or lein or encumbrance upon the real
property described in the complaint,
adverse to the plaintiffs title thereto,
whether such claim or possible claim be
present or contingent,
                Defendants and Respondents.

APPEAL FROM:   District Court of the Eighteenth Judicial District,
               In and for the County of Gallatin,
               The Honorable Joseph Gary, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:
          Ben Berg, Jr. argued; Berg, Stokes, Tollefsen & Hayes,
          Bozeman, Montana

     For Respondent:
          J. Robert Planalp argued; Landoe, Brown, Planalp &
          Kommers, Bozeman, Montana
          Rodney Schwasinger argued, Bozeman, Montana

                              Submitted: May 9, 1989
                               Decided: July 19, 1989

Filed:

                              Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This case comes on appeal from the Eighteenth Judicial District, Gallatin County, the Honorable Joseph B. Gary presiding. The District Court quieted title in the plaintiffs, purchasers of certain real property in Bozeman, Montana. Previously, the property had been held by a group of investors (hereinafter referred to as the co-owners) from British Columbia, Canada, each of whom held their respective interests as tenants in common. In addition to the quiet title determination, the District Court awarded defendant Goulding a portion of the sale proceeds in proportion to his initial capital investment. We affirm in part, reverse in part and remand for further proceedings.

In December, 1977, Brian George Goulding and other co-owners acquired the real property, personal property, fixtures, furniture, liquor license and other business assets of the Inn of Bozeman (Inn). The parties entered into an agreement for the purpose of setting forth the rights and obligations with respect to their interest in the Inn. Specific provisions of the agreement will be discussed later in this opinion.

In December, 1983, citing financial difficulties, the co-owners decided to list the property for sale. Throughout the following year, meetings were held during which the co-owners discussed prospective sales and financial problems of the Inn. Goulding or his attorney, Michael Karton, attended most of these meetings.

Between December, 1984, and March 9, 1985, Goulding lived in the Philippines with his family. Goulding did not leave a forwarding address with the other co-owners, nor

2

his instructions with his attorney regarding a potential sale of the Inn.

On January 3, 1985, fourteen of the sixteen co-owners entered into an agreement with plaintiffs for the sale of the Inn. The co-owners attempted to contact Goulding through his attorney and sent by registered mail letters informing him of the majority decision to sell the property. In accordance with the terms of the co-owners' 1977 agreement, Goulding was informed that his consent would be "deemed" given if written objection to the sale was not received within ten days. (Thereafter, the co-owners petitioned the Supreme Court of British Columbia for an order authorizing appellant Williamson to sign on Goulding's behalf. However, all parties agree the order is void for lack of jurisdiction.)

On March 20, 1985, after returning from the Philippines, Goulding visited his attorney and was given a copy of the sale agreement and the registered letter. Goulding did not respond to the letter. However, on April 3, 1985, Goulding attended a meeting of the co-owners. At that meeting the sale documents were signed by all co-owners except Goulding, who abstained. Two days later, Goulding sent a letter to the co-owners setting forth his objections to the sale.

Plaintiffs initiated a quiet title action against Goulding, alleging Goulding's claimed ownership interest in the Inn created a cloud on their title. Goulding counterclaimed, stating the co-owners had no authority to transfer his ownership interest in the Inn. Goulding additionally claimed plaintiffs had recorded the deed intentionally and with knowledge of his interest in the property, and thereby depreciated his interest. Later, the other co-owners of the Inn filed a complaint in intervention.

On December 3, 1987, the Honorable Joseph B. Gary entered judgment in favor of the plaintiffs. The District Court found the agreement between the co-owners required majority vote for the complete sale of the property. Alternatively, the court ruled Goulding impliedly consented to the sale because he failed to give written objection. Finally, in original Conclusion of Law No. 8, the court ordered that upon delivery of the deed to plaintiffs, all monies in deposit due and owing to Goulding shall be delivered by the escrow agent to Goulding.

By order of March 8, 1988, the District Court amended its Findings to include the following:

> Finding No. 13. During the negotiations for the sale of the principle assets it was necessary that additional capital be infused in the corporation for operating expenses. A Motion was passed at the meeting of December 8, 1983, at which the Defendant Goulding was not present, that any advance of capital would be considered as a loan at the interest rate of twenty-five percent (25%) or at U.S. prime rate plus six/nine percent (6/9%) and that a legal opinion was to be obtained as to whether this was enforceable. No legal opinion was ever obtained and the net effect of this Motion as shown by the evidence would be to completely wipe out the equity of all of the original investors in the business and all monies remaining on hand would be paid to those persons advancing funds.
>
> That the effect of wiping out all original investors was done without notice to the members of the partnership that this would be the result taken at the meeting and would amount to an inequitable result and contrary to due process of law.

4

14. That any investments made after the December 14, [sic] 1983 meeting by the members of the partnership should be treated as capital investments and added to each partner's original capital account so that the monies remaining in escrow at this time be paid out pro rated share on all capital accounts.

Conclusion of Law No. 8 was amended to conform to the new findings and reads as follows:

That upon the delivery of the Deed to Felska and Solvie by either Goulding or a referee appointed by the Court to execute a deed, that all monies in deposit at Security Title Insurance Company shall be distributed to the members of the partnership in proportion of their original investments plus any infusion of capital following the December 14, [sic] 1983 meeting. Said payments following that meeting constitute a capital investment and not a loan.

On April 13, 1988, co-owners moved for relief under Rule 60(b)(2), M.R.Civ.P., from the March 8, 1988 order, seeking to admit a legal opinion written December 9, 1983, which discussed the legality of the 25% interest on loans. On April 18, 1988, the District Court denied the motion without opinion.

On June 28, 1988, the District Court entered judgment and decreed the plaintiffs fee owners of the real property. Further, the court ordered that all monies held in escrow be distributed to the partners in proportion to their original investments plus any infusion of capital.

Upon Goulding's motion to amend for a definite amount due him, the District Court, on August 8, 1988, ordered that he should receive 10.26% of all net proceeds of disposition or $25,163.70, together with interest from the date of sale,

5

plus 10.26% of all other assets which arose out of the operation and sale of the Inn.

The following issues are raised on appeal:

1. Did the District Court err when it quieted title in the plaintiffs?

2. Did the plaintiffs and co-owners slander Goulding's title?

3. Did the District Court err when it adopted Findings Nos. 13 and 14 and Conclusion of Law No. 8, in which it determined the advances made after December, 1983 were capital investments rather than loans and wherein it awarded a money judgment?

4. Did the District Court err when it denied the co-owners' Rule 60(b)(2), M.R.Civ.P., motion?

Our scope of review is such that we may consider the contract language independently. SAS Partnership v. Schafer (1982), 200 Mont. 478, 653 P.2d 834. Generally, contract ambiguities are questions of fact. S-W Co. v. Schwenk (1977), 176 Mont. 546, 568 P.2d 145. However, the determination of whether or not an ambiguity exists is one of law, freely reviewable by this Court. SAS Partnership; Martin v. United States (9th Cir. 1981), 649 F.2d 701; United States Fidelity and Guaranty Co. v. Newman (9th Cir. 1981), 656 F.2d 457.

The entire case focuses upon the 1977 agreement entered into between the 16 co-owners. Therefore, a review of the significant contract provisions is in order:

> 15. . . . Voting shall be by hand, with each Co-Owner having one vote, unless otherwise demanded by any Co-Owner, in which case voting shall be according to the equities of the Co-Owners in the Inn. All decisions shall be by majority vote unless otherwise specified in this Agreement. (Emphasis added.)

RESTRICTIONS OF TRANSFER:

16. No Co-Owner shall assign, or otherwise dispose of, all or any part of his interest in the Inn unless such Co-Owner:

> A. has obtained the prior written consent of the other Co-Owners; or
>
> B. has first offered his interest in the Inn to the other Co-Owners . . .

17. No Co-Owner shall mortgage, pledge, charge or otherwise encumber all or any part of his interest or restrict the transferability of his co-ownership interest unless:

> A. such Co-Owner has obtained the prior written consent of the other Co-Owners; and
>
> B. the holder of such mortgage, pledge, charge encumbrance or other restriction agrees to be bound to and with the other Co-Owners and to grant to the other Co-Owners the rights of first refusal and options to purchase hereby granted amongst and between the Co-Owners, pursuant to the terms of this Agreement.

. . .

## BORROWING PROVISIONS:

21. The Co-Owners shall borrow from time to time all the sums of money required in connection with the carrying on of the Inn, upon the security of the assets of the Inn to the extent possible. The approval of all Co-Owners shall be acquired when establishing lines of credit or financing with any banks or other financial institutions or private lenders.

## LOANS BY CO-OWNERS:

22. If at any time a Co-Owner shall properly determine that, in order to protect or preserve any of the properties or other assets of the Inn, additional funds are required to meet the current cash requirements of the Inn and the same are not available from sources already available to the Co-Owners, then any such Co-Owner may, but shall not be obligated to, advance such funds to the Inn or pay such funds to third parties for the benefit of the Inn. . . Any such advances or payments shall during their existence bear interest at a rate determined by the Manager.

. . .

DISTRIBUTION OF DISTRIBUTABLE FUNDS:

28. . . . Distributable funds shall be distributed as follows:

> A. Firstly, in repayment of the principal and accrued interest under each temporary loan, if any, to the Inn pursuant to Paragraph 22 hereof which remains unpaid, with all amounts being applied firstly to accrued interest and the balance to principal, and, if more than one such loan remains unpaid, then on a pro rata basis;

> B. Secondly, the balance if any shall be distributed to the Co-Owners in accordance with their respective interests.

29. In the event that the Co-Owners agree to sell all or any portion of the interest or properties of the Inn, then in such event, the net proceeds of such sale (except for the amounts thereof required to be paid to any liabilities) shall be deemed to be distributable funds and shall be distributed in accordance with the provisions of the aforesaid. (Emphasis added.)

. . .

IMPLIED CONSENT:

> 37.  In any instance under this Agreement in which the consent or approval of a CoOwner [sic] to any proposed action already approved by a majority of the Co-Owners is required, such consent or approval shall be deemed to have been given unless written objection to such proposed action, setting out the grounds for such objection, is sent by such objecting Co-Owner to the General Manager within ten (10) days after receipt of a written request for such consent or approval.

An ambiguity exists when a contract is subject to two interpretations.  In such an instance, parol testimony may be used to ascertain the parties' intent.  S-W Co., 568 P.2d at 147.

> However, intent of the parties is only looked to when the agreement in issue is not clear on its face . . . Where the contractual language is clear and unambiguous on its face, it is this Court's duty to enforce the contract as drafted and executed by the parties. (Citations Omitted.)

Monte Vista Co. v. Anaconda Co. (Mont. 1988), 755 P.2d 1358, 1362, 45 St.Rep. 809, 814; citing Glacier Campground v. Wild Rivers, Inc. (1978), 182 Mont. 389, 597 P.2d 689.  It is fundamental when reviewing contractual disputes that we are required  to read the entire contract together and give effect to every part, if reasonably practicable.  Section 28-3-202, MCA.

The 1977 agreement is silent concerning the specific vote required for the full sale of the property.  However, the agreement mandates unanimous co-owner consent for one owner's sale or encumbrance of his individual interest and,

9

in connection with the regular business activities, the establishment of lines of credit and financing with banks or financial institutions. Goulding argues that because unanimous consent is required of these activities, unanimous consent must also be required for the sale of the business. In support of his position, Goulding points to comments made during meetings that "the sale agreement requires the signatures of Messrs. Otto and Goulding, both of whom are unwilling to sign" and statements regarding the co-owners' need for "powers of attorney executed by all partners to sell the motel." Further, Goulding contends the void British Columbia court order indicates that the co-owners believed unanimous consent was necessary to effect a full sale of the business.

The District Court found the contract language clear and unambiguous and therefore rejected Goulding's attempt to introduce extrinsic evidence. We agree.

While the contract does not specifically address the vote required to effect a full sale, the absence of that specific language does not render the contract ambiguous. First, the provisions requiring unanimous consent address specific circumstances, unrelated to the sale in issue. Because the unanimous consent provisions are definite, we refuse to stretch their applicability. Additionally, the parties contemplated the full sale of the business, as evidenced by Paragraph 29, which discusses the distribution of proceeds in the event of a sale. More importantly, however, the agreement states that all decisions are to be determined by majority vote, unless otherwise specified. We interpret this provision to limit the instances which require unanimous consent, because it indicates the co-owners' intent to maintain majority vote for all other decisions.

When a contract is clear and unambiguous, this Court must enforce the agreement as written by the parties. We conclude that Paragraph 15, which allows for majority vote, governs the sale of the property.

The District Court concluded that Goulding's letter of April 5, 1985, did not specifically object to the sale, as required under Paragraph 38 of the agreement. Rather, Goulding expressed concern over management problems, the repayment of loans to various co-owners, amounts held in escrow, and legal questions of warranties. Because we uphold the sale on other grounds, we need not address the matter. However, we state simply that it is clear to this Court that Goulding did not act promptly to protect his interest in the Inn.

Next, Goulding contends that because the co-owners maintained their interests as tenants-in-common, a majority vote of the co-owners is ineffective to divest him of his property. However, Paragraph 38 of the agreement provides:

> The Co-Owners shall and will sign such further and other papers and documents, shall cause such meetings to be held and do and cause to be done and perform such further and other acts or things that may be necessary or desirable from time to time in order to give full effect to this Agreement and each and every part hereof.

Further, Paragraph 42 states:

> Any decision of the Co-Owners made in the manner herein before described shall be fully and faithfully carried out by all Co-Owners as _if all Co-Owners had unanimously consented_ to such decision, and all Co-Owners shall execute such documents and things as may be necessary or advisable for the full carrying out of the true intent of such decision. (Emphasis added.)

The agreement is sufficient to control the rights of the various co-owners. Hence, by signing the agreement, Goulding expressly agreed to abide by all decisions rendered by the majority. We conclude Goulding is required to comply with the will of the majority.

In light of the above, Goulding's slander of title counterclaim against the plaintiffs must necessarily fail. In First Security Bank v. Tholkes (1976), 169 Mont. 422, 427, 547 P.2d 1328, 1331, we defined slander of title as "[o]ne who maliciously publishes false matter which brings in question or disparages the title to property, thereby causing special damage to the owner . . ." See, 50 Am.Jur.2d, Libel and Slander, § 541. Since we upheld the sale and rejected Goulding's claimed interest in the property, plaintiffs' actions were not slanderous.

Next, we consider the apportionment of funds addressed in the District Court's amended order of March 8, 1988. Based on plaintiffs' Exhibit 2, a summary of investments and advanced funds at 10% and 12% interest rates, the District Court found that "[t]he net effect of allowing interest on the advancements after the December 8, 1983 payments, . . . is to completely wipe out all the original investors and giving all of the remaining assets to those persons that advanced monies." The court concluded the equitable manner of disbursing the funds would be to add the contributions to the original capital investment of the respective co-owners and distribute the funds on a pro rata basis.

The standard of review for a case in equity is that the judgment of the trial court is presumed correct, and all legitimate inferences will be drawn to support this presumption. This Court's inquiry into the evidence is limited to whether the findings of the trial court are clearly erroneous. Rule 52, M.R.Civ.P.; and Citizens State

12

Bank v. Bossard (Mont. 1987), 733 P.2d 1296, 44 St.Rep. 468. With this standard in mind, we review the evidence, dividing our discussion into post- and pre- December, 1983 advancements.

The co-owners contend the evidence indicates an intent to treat the advancements as loans with an accrued interest, not as capital investments. We agree in part. The evidence supports a loan designation for the post-December, 1983, advancements. First, in his letter of April 5, 1985, Goulding acknowledged the monies advanced were loans. The record indicates Goulding objected to an interest rate of 59%, but stated that a "usual bank rate is reasonable."

Second, Paragraph 22 of the agreement provides for loans, at a rate of interest determined by the manager, by the various co-owners of the Inn, if necessary to protect or preserve the assets. Paragraphs 28 and 29 provide for distribution of sale proceeds first to the repayment of principal and accrued interest, and thereafter the balance to the co-owners according to respective shares.

Third, minutes of the co-owners' meetings indicate complete discussions took place regarding the poor financial condition of the Inn. During these meetings, management requested additional funds for the Inn which included an interest rate commensurate with the risk and a repayment preference upon distribution of the sale proceeds. However, it is not clear what rate of interest the parties contemplated: (25%; 6%/9% over U.S. prime; or the "highest legal rate"). Nor is it clear what reasonable rate could be applied. We leave these specific questions to the District Court upon remand.

The District Court's findings related solely to advancements made after December, 1983. However, plaintiff's Exhibit 2 indicates that the co-owners contributed funds in

13

January 1982 and 1983. In addition, the co-owners expressed a desire to retroactively designate these monies as loans, as evidenced by the minutes of their December 8, 1983, meeting:

> MOTION: All funds contributed <u>after</u> <u>the</u> <u>initial</u> <u>investment</u> accrue interest at U.S. Prime rate plus 6%/9% and that this interest should be paid out monthly.
>
> All monies advanced since that time should be secured, if possible, and be treated as loans from partners.
>
> Interest accrued on funds contributed before December 31, 1983, be treated as a portion of the partners['] loans. (Emphasis added.)

Neither party presented argument regarding these funds. The District Court must make specific findings regarding the pre-December, 1983, advancements by determining the legality of the retroactive designation of these funds as loans.

We conclude the co-owners' final issue regarding the District Court's denial of the Rule 60(b)(2) motion, is moot.

Upon remand, the District Court may give the evidence whatever weight it deems appropriate.

Affirmed in part, reversed in part and remanded for proceedings consistent with this opinion.

John Conway Harrison
Justice

We concur:

J. A. Turnage
Chief Justice

14

R.C. McDonough

L.C. Gulbrandson

_____

Justices

Mr. Justice John C. Sheehy, dissenting:


I dissent and would affirm the District Court in total.

This case is an example of the minor investors ganging up on one of the two largest investors by passing resolutions in his absence which in effect take away his investment and leave nothing of the net proceeds in which the larger investor will participate. Judge Gary saw through this obvious raid on the net proceeds and refused to agree. I would affirm Judge Gary.

_____
Justice

Mr. Justice William E. Hunt, Sr., dissenting:


I concur in the foregoing dissent of Justice Sheehy.

_____
Justice