ROBERT W. SCHELL and MARY ANN SCHELL, PLAIN-
TIFFS AND RESPONDENTS, v. JULIUS C. PETERS, MARY E.
SMITH, JOHN DOE ONE, and JOHN DOE TWO, DE-
FENDANTS AND APPELLANTS.

No. 10922.
Submitted October 20, 1965. Decided January 7, 1966.
410 P.2d 152.

See **C. J. S.**, Agency, § 103.

Howard C. Burton, Great Falls, H. William Coder (argued), Great Falls, for appellants.

Randall Swanberg (argued), Great Falls, Swanberg, Koby & Strope, Great Falls, for respondents.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

This is an appeal by defendants-appellants Julius C. Peters, Mary E. Smith, Sixto Custado and Country Club Tower Corporation from an order of the District Court of the Eighth Judicial District of the State of Montana, County of Cascade, granting plaintiffs-respondents' motion for summary judgment in an action for trespass, and leaving for determination by jury the sole question of damages.

The claim involves an apartment owned by Robert W. and Mary Ann Schell, husband and wife, as joint tenants, located in the Country Club Tower Apartment Building, in Great Falls, Montana.

The plaintiffs acquired fee simple title to Apartment 9-B by warranty deed executed on August 13, 1957, by Country Club Tower Corporation, the previous owner. On August 14, 1957, a "Separate Agreement" was executed by the Schells which in part is as follows:

"SEPARATE AGREEMENT

"In consideration of the execution and delivery of the attached conveyance to them, undersigned, *ROBERT W. SCHELL* and *MARY ANN SCHELL,* husband and wife, as joint tenants with right of survivorship and not as tenants in

common (herein called Apartment Owners), for themselves, heirs, representatives and assigns, covenant and agree that they will not sell or sublease said Apartment 9-B to anyone without first securing written approval thereof from the holders of a majority of the stock of TOWER MANAGEMENT COR-PORATION (said shares being twenty (20) in number), provided that if the majority of said shareholders refuse to give such consent to a proposed sale or sublease, then Apartment Owner shall give said Tower Management Corporation the option to purchase said apartment and the one (1) share of the capital stock of Tower Management Corporation allocated thereto at the price hereinafter set forth * * *."

The plaintiffs lived in the apartment from 1957 to 1962 when, due to the birth of a child, they decided a house would provide for their needs. The plaintiffs then took steps to either rent or sell the apartment. They found a party interested in renting and thereafter proceeded to obtain the approval of "the holders of a majority of the stock of Tower Management Corporation." A consent was eventually obtained, in the following form:

"CONSENT TO LEASE AND SALE

"The undersigned, being the holders of a majority of the stock of Tower Management Corporation (said shares being twenty (20) in number) and holding the number of shares indicated hereunder, hereby give written approval and consent to ROBERT W. SCHELL and MARY ANN SCHELL, owners of Apartment 9-B, Country Club Tower Apartment, to lease and sublet said apartment to Ramona Haeh and Ona Haeh for a period of not to exceed four (4) years from February 1, 1962, and to sell said apartment to Ramona Haeh and Ona Haeh. Dated this 26th day of January, 1962."

This instrument was signed by Country Club Tower Corporation by its Vice-President Peters, as holder of 8 shares of Tower Management Stock; and by the Peters, the Shanleys and the Schells, each as a holder of one share of Tower Management Corporation stock for a total of 11 shares of the 20 shares.

By affirmative defenses alleged in their answer, defendants contended that this consent to lease and sale was obtained from Peters by misrepresentation and fraud in that Schell represented to Peters that he had obtained similar consents from other stockholders, when in fact he had not. The provisions of the "Separate Agreement" could only run in favor of Tower Management Corporation and as will hereafter appear it is clear such corporation is not a party to this action, nor has Peters claimed to have represented such corporation in his actions which form the basis of this claim. Once again, as has appeared in the series of cases hereinafter referred to which have reached this court in connection with this apartment building, Peters has difficulty distinguishing between his personal interests and those of the separate corporate structures involved.

A lease and option to sell was delivered to the Haehs in February, 1962, which was to expire on February 29, 1964. The agreement also contained an option to renew the lease at the end of this period if the Haehs decided not to buy the apartment by then.

The Haehs, having occupied the apartment for the full two-year initial term, informed the Schells that they were leaving Great Falls and therefore did not wish to buy the apartment, but would like to rent it on a month-to-month basis until April 15, 1964. The Schells agreed to this arrangement and received the rent until April 15, notably still within the period of the consent to lease previously quoted. The Schells, having two homes and requiring only one, decided they would move back into the apartment when the Haehs vacated it.

On April 6, 1964, defendant Mary E. Smith, an employee of Peters, received instruction on the telephone from Peters, then in California, "to represent the Country Club Tower Corporation and go down to Apartment 9-B and take immediate possession of this apartment * * *."

Mrs. Smith's deposition shows the following:

"Q. What did he tell you to do? A. To go down and take

possession of the apartment, to have the lock changed and to have the utilities, telephone, electricity, put in the name of the Country Club Tower Corporation because I was to represent the Country Club Tower Corporation, and I was taking possession of this apartment for the Country Club Tower Corporation."

Mrs. Smith followed those instructions fifteen minutes later. When she arrived at Apartment 9-B, the Haehs were in the process of moving out their belongings. Mrs. Smith caused the lock on the door to be changed the same day. Thereafter, she personally maintained supervision over the apartment, kept possession of the new key at all times, and admitted the Haehs only upon their request. During the nights of April 6 and 7, Mrs. Smith sat on the stairs in the hallway just outside Apartment 9-B. On April 8, both Haehs having left town temporarily, Mrs. Smith slept upstairs on the tenth floor where she felt she could adequately keep the apartment under her surveillance. Mrs. Haeh returned on April 13 to complete the moving out of the apartment. At that time, Mrs. Smith moved into the apartment herself and slept there until about April 17, when Peters arrived from California. At that time, he removed the possession of the apartment from Mrs. Smith and placed it in defendant Sixto Custado, another employee, the latter then moving into the apartment and sleeping there.

Sometime between April 6 and 13, plaintiff Schell went to the apartment. Mrs. Smith testified in her deposition that "Yes, Mr. Schell came to the apartment, knocked on the door, asked for admittance into his apartment, he was told the Country Club Tower Corporation was in possession of the apartment and he could not enter. Q. Was he allowed to enter? A. No."

The complaint in this action was filed on April 28, 1964, at which time the situation remained substantially the same as on April 17, 1964. None of the above facts are disputed.

The question before this court is whether the District Court erred in granting the plaintiffs' motion for summary judg-

ment. Rule 56, subsections (a) and (c) so far as pertinent provide:

"(a) *For Claimant.* A party seeking to recover upon a claim * * * may, at any time after the expiration of 20 days from the commencement of the action * * * move for a summary judgment in his favor *upon all or any part thereof.* (Emphasis ours.)

(c) *Motion and Proceedings Thereon.* The motion shall be served at least 10 days before the time fixed for the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file show that there is *no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.* * * *" (Emphasis ours.)

Subsection (c) clearly establishes two separate procedures for the trial court. First, without trying issues of fact, the court must determine whether there exists a genuine issue of *material* fact, and second, if none is found, then the court must apply substantive law to the established facts, and this application of the law must be proper and correct. The appellate court properly reviews these steps, or functions, performed by the trial court. See 6 Moore F.P.2d 2973, § 56.27(1).

Turning to the question of whether there exists a genuine issue of material fact, let it be noticed here that both this court and the district court are entitled to take judicial notice of its records and files in a summary judgment procedure and review. 6 Moore F.P.2d 2208, § 56.11(9). Previous litigations involving The Country Club Tower Apartments have been processed through the Eighth Judicial District, reaching this court as Thisted v. Country Club Tower Corp., 146 Mont. 87, 405 P.2d 432, and Thisted v. Tower Management, 147 Mont. 1, 409 P.2d 813, and State ex rel. Burris v. Tower Management, 145 Mont. 448, 401 P.2d 575.

On appeal appellants attempt to raise an issue of fact concerning the construction and intention of the parties to several of the agreements signed by the Schells. It is well-settled

that the intention of the parties to a contract are not to be inquired into unless on the face of the contract there is ambiguity. McNussen v. Graybeal, 146 Mont. 173, 405 P.2d 447. It is a question of law for the court to determine first as to whether there exists ambiguity sufficient to submit the question of intention to the trier of fact. The trial court found and this court agrees that no such ambiguity exists in any of the instruments executed and in the record before us.

There existing no genuine issue before the district court, the cause was ripe for summary judgment procedure.

Despite rather intricate arguments set forth by the appellants concerning the law applicable to the above-mentioned undisputed facts, one glaring fact overrides them all. Peters had absolutely no right to initiate the action taken against the plaintiffs and apartment 9-B, owned by the plaintiffs in fee simple.

The deposition of Mary E. Smith, Peters' secretary, quoted above, undeniably shows that Peters repossessed the apartment in the name of Country Club Tower Corporation and had the "utilities, telephone, and electricity, put in the name of Country Club Tower Corporation."

Certainly such action was not inferred by the "Consent to Lease and Sale" agreement; that agreement, which was for a term of four years, had not yet expired. That agreement states no conditions or terms concerning the manner in which rent should be collected for the apartment. It does limit the right to rent or sell only to the Haehs. The Schells might be in violation of that agreement if they rented or sold the apartment to any persons other than the Haehs. Further, that agreement gives no right of action to Peters or Country Club Tower Corporation in the event of its violation. The argument that Peters was induced to sign the agreement due to fraud on the part of the Schells is without merit.

The appellants argue that any action taken by them was taken while the Haehs were in possession of the apartment and therefore the Schells have no claim for trespass. Yet on April

28

17, two days after full ownership and right to possession returned to the Schells by reason of the expiration of the Haeh lease, Peters took steps to place defendant Sixto Custado in physical possession of the apartment, causing him to sleep therein and removing Mrs. Smith from her possession of the apartment.

Without separating or distinguishing the various activities of the defendants, this court feels that from April 6 the defendants committed a naked and unlawful trespass on property belonging to the plaintiffs, and that such trespass continued up to and beyond the time a complaint was filed against them.

No instrument of the several executed by the plaintiffs grants such authority to any person or corporation, including Tower Management Corporation, which merely is granted an option to purchase the apartment from the apartment owner *if* the holders of a majority of his shares of stock so desire.

The trial court properly determined there existed no genuine issue of material fact and then proceeded to properly apply the law to the established facts. Nor did the trial court err in reserving the issue of damages for a later trial. Rule 56 itself declares that summary judgment may be granted "upon all or any part" of a claim. See also 6 Moore F.P.2d, § 56.17[18], p. 2529; 3 Barron & Holtzoff, § 1241, p. 187.

The judgment is affirmed and the cause remanded for further proceedings.

MR. JUSTICES JOHN CONWAY HARRISON, ADAIR, DOYLE and CASTLES concur.