**PENNINGTON'S INC., a Montana corporation, Plaintiff,**

v.

**BROWN–FORMAN CORPORATION, a foreign corporation, Defendant.**

**No. CV–91–013–GF.**

United States District Court, D. Montana, Great Falls Division.

Dec. 2, 1991.

Barry T. Olson, Lynn M. Seelye, Great Falls, Mont., for plaintiff.

Stuart L. Kellner, Hughes, Kellner, Sullivan & Alke, Helena, Mont., for defendant.

## MEMORANDUM AND ORDER

HATFIELD, Chief Judge.

Plaintiff, Pennington's, Inc. ("Pennington"), is a beer and wine distributor located in Great Falls, Montana. In October, 1983, Pennington entered an exclusive distribution agreement with California Cooler, Inc., whereby Pennington agreed to distribute California Cooler, a wine product, to retail outlets in north central Montana. On September 5, 1985, Brown–Forman Corporation ("Brown–Forman") acquired the assets of California Cooler, Inc., including its distribution contract with Pennington. The relationship between Brown–Forman and Pennington was governed by the terms of that contract. On February 13, 1987, Brown–Forman notified Pennington of its intention to terminate the distribution agreement effective thirty days thereafter. The present litigation ensued. Pennington seeks monetary damages as a result of Brown–Forman's alleged breach of the distribution agreement. The matter is presently before the court on Brown–Forman's motion for summary judgment, pursuant to Fed.R.Civ.P. 56.[1]

Brown–Forman relies upon the "termination" provision of the distribution agreement as having granted it a clear and unambiguous right to terminate the contract at will. The termination provision reads:

> Either party may terminate this agreement in its sole discretion with or without cause at anytime by giving the other party thirty (30) days written notice of termination, except as otherwise required by law.

■ In response, Pennington asserts the phrase "except as otherwise required by law," precluded Brown–Forman from terminating the distribution agreement at will. Specifically, Pennington asserts the distribution agreement could legitimately have been terminated only in "good faith" under Montana common law, which in Pennington's opinion means only upon a showing of good cause. The essence of Pennington's position is that the covenant of good faith implied in a commercial contract may, under appropriate circumstances, pre-

1. The parties disagree as to whether the substantive law of Montana or the law of California controls their respective rights and obligations under the distribution agreement. The contract contains a choice of law provision:

> Controlling Law. The validity, interpretation, and performance of this agreement shall be controlled by and construed under the laws of the State of California.

Ordinarily, the provision would indeed be enforceable since the intention of the parties at the time they contracted is controlling. See, Steinke v. The Boeing Company, 525 F.Supp. 234, 236 (D.Mont.1981). However, Pennington's argues Brown–Forman has, in effect, waived its right to rely upon the choice of law provision by previously relying upon the substantive law of Montana to obtain dismissal of Pennington's claims for relief founded in tort.

The choice of law issue need not detain the court. Even if Pennington's position regarding the applicability of Montana substantive law is accepted, Brown–Forman would be entitled to summary judgment.

clude a party from exercising an express, and unambiguous discretionary power of termination. Pennington expressly identifies the basis of its claim as Brown–Forman's failure to provide it a reasonable period of time, *i.e.,* something beyond 30 days, to mitigate the effect of the termination. Pennington relies primarily upon its interpretation of the holding in *Story v. City of Bozeman,* 242 Mont. 436, 791 P.2d 767 (1990), which addressed the current status of the "implied covenant of good faith and fair dealing" in Montana.[2] The implied covenant of good faith and fair dealing is "a mutual promise implied in every contract that the parties will deal with each other in good faith, and not attempt to deprive the other party of the benefits of the contract through dishonesty or abuse of discretion in performance." *Beaverhead Bar Supply, Inc. v. Harrington,* 247 Mont. 117, 805 P.2d 560, 564

(1991), *citing, Story,* 791 P.2d at 775. The implied covenant requires every party to a contract to use any discretion conferred by the contract in an honest and commercially reasonable manner. *Story,* 791 P.2d at 775. The Montana Supreme Court expressly recognized that the standard is the same as applied to merchants under the Uniform Commercial Code. *Id.*

The distribution agreement expressly provides the agreement was terminable at will, subject to a thirty day notice requirement. The court rejects Pennington's position to the extent it suggests the implied covenant of good faith and fair dealing operates to imbue the distribution agreement, and more particularly the termination provision, with a requirement that there exist "good cause" to terminate the agreement.[3]

**2.** The implied covenant of "good faith and fair dealing" in the law of commercial contracts underwent a rapid evolution in the decisional law of the State of Montana. For a brief period of time, Montana stood alone in recognizing a breach of the implied covenant of good faith and fair dealing in the context of a commercial contract as a tort. *See, Story v. City of Bozeman,* 791 P.2d at 773–74. In *Story,* the court observed:

> In the seminal case of *Nicholson v. United Pacific Ins. Co.,* we adopted [the bad faith tort] remedy in the commercial setting to deal with a particular type of problem.... This court affirmed tort damages against the defendant noting that each party to a contract has a justifiable expectation that the other will act in a reasonable manner in the performance or efficient breach of a contract. When one party used its discretion to arbitrarily, capriciously or unreasonably deprive the other party of the benefit of the contract, those expectations were violated. [*Nicholson v. United Pacific Ins. Co.,* 219 Mont. 32, 710 P.2d 1342 (1985).]

The *Story* court proceeded to affirm application of the *Nicholson* reasoning to the typical contract case, but expressed its view that the *Nicholson* tort remedy was excessive. 791 P.2d at 775. The court found the "good faith" standard applied to merchants under the Uniform Commercial Code provided a more workable model for most contracts not covered by specific statutory provisions:

> We hold that every contract regardless of type, contains an implied covenant of good faith and fair dealing. A breach of the covenant is a breach of the contract. Thus, breach of an express contractual term is not a prerequisite to breach of the implied covenant. For

every contract not covered by a more specific statutory provision, the standard of compliance is that contained in [Mont.Code Ann. § 28–1–211]:

> The conduct required by the implied covenant of good faith and fair dealing is honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade. This is the same standard as applied to merchants under the Uniform Commercial Code. Each party to a contract has a justified expectation that the other will act in a reasonable manner in its performance or efficient breach. When one party uses discretion conferred by the contract to act dishonestly or to act outside of accepted commercial practices to deprive the other party of the benefit of the contract the contract is breached.

Consequently, the *Story* court expressly limited the "bad faith" tort remedy to "special relationship" contracts, and delineated the elements essential to establish the existence of a "special relationship." 791 P.2d at 776.

**3.** The most elemental principle of contract construction provides that a contract must be construed according to the intentions of the parties at the time the contract is executed. Mont.Code Ann. § 28–3–301 (1987). Absent an ambiguity, the language of a written contract governs its interpretation. Mont.Code Ann. § 28–3–401 (1987); *Schell v. Peters,* 147 Mont. 21, 26, 410 P.2d 152, 155 (1966). Extrinsic evidence may be introduced to explain the intentions of the parties only when an ambiguity exists. Mont. Code Ann. §§ 28–3–301 and 402; *McNussen v. Graybeal,* 146 Mont. 173, 405 P.2d 447 (1965). "It is a question of law for the court to determine first as to whether there exists ambiguities

The crux of Pennington's claim, as it expressly acknowledges, is the validity of the thirty-day notice provision. Pennington argues that Brown Forman's reliance upon the thirty-day notice provision, without taking into consideration the circumstances of Pennington's distributorship, constituted arbitrary conduct in contravention of the implied covenant of good faith and fair dealing. Restated, Pennington challenges the provision as unconscionable.[4]

Neither party cites, nor is the court aware of any decisional law in the State of Montana, which addresses the issue of unconscionability of a termination provision that requires only minimal notice.[5] The issue has, however, been addressed by other jurisdictions. The court turns to assess the rationale of those cases which have addressed the doctrine of unconscionability in the commercial setting.[6]

■ The prohibition against unconscionability has been held to bar a right expressly conferred by contract, if the termination would be contrary to equity and good conscience. *See, e.g., deTreville v. Outboard Marine Corp.*, 439 F.2d 1099 (4th Cir.1971) (contract provision giving franchisor right to terminate franchise without cause on thirty days' notice).[7] As would be expect-

---

sufficient to submit the question of intention to the trier of fact." *Schell v. Peters, supra,* 147 Mont. at 27, 410 P.2d 152; *see also, SAS Partnership v. Schafer,* 200 Mont. 478, 482, 653 P.2d 834, 836 (1982).

The termination provision of the distribution agreement is clearly not ambiguous, and Pennington's does not contend otherwise. Consequently, the provision must be interpreted as drafted.

4. A leading commentator on the Uniform Commercial Code notes that in some cases, particularly franchise cases, courts have in effect equated good faith to the avoidance of hardship or unconscionability. R. ANDERSON, UNIFORM COMMERCIAL CODE, § 2–309:16 (3d ed 1982). "It would appear preferable to place a decision squarely on the ground of hardship or unconscionability rather than read into 'good faith', a meaning that is not indicated by the language of the Code and that one can very well surmise was never considered by the legislature in adopting the statute as detailed as the Code." *Id.*

5. Pennington's suggests the decision of the Montana Supreme Court in *Bronken's Good Time Co. v. J.W. Brown,* 203 Mont. 427, 661 P.2d 861 (1983), supports its position. Pennington's reliance upon *Bronken's Good Time Co.,* however, is misplaced. The distributorship agreement at issue in that case contains no provision for termination. 661 P.2d at 863. In fact, the court expressly acknowledged that the issue of "[w]hether distributorship agreements containing no express provision for duration or termination may be terminated at will or only after a reasonable time has expired, has not been decided by this Court." In resolving the issue, the court opted to follow the majority rule which provides that such agreements are terminable at will only after a lapse of a reasonable time and upon reasonable notice. 661 P.2d at 863.

The court's holding is consistent with numerous cases decided under section 2–309(3) of the Uni-

form Commercial Code, which provides that "termination ... except on a happening of an agreed event requires that reasonable notification be received by the other party...." *See, e.g., Monarch Beverage Co. v. Tyfield Importers, Inc.,* 823 F.2d 1187 (7th Cir.1987); *Sinkoff Beverage Co. v. Jos. Schlitz Brewing Co.,* 51 Misc.2d 446, 273 N.Y.S.2d 364 (1966). The Montana Supreme Court did not address the issue of the enforceability of an express provision permitting termination of a distributor agreement by either party upon providing notice within a specified period of time.

6. When presented with an issue of substantive Montana law as to which there has not been a definitive ruling by the Montana Supreme Court, this court must undertake to predict how the Montana Supreme Court would rule if confronted with that issue of law. *See, Meredith v. Winter Haven,* 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943); *Molsbergen v. United States,* 757 F.2d 1016 (9th Cir.1985), *cert. dismissed,* 473 U.S. 934, 106 S.Ct. 30, 87 L.Ed.2d 706. In that regard, the court notes that the Montana Supreme Court, both in the development and refinement of the doctrine of the implied covenant of good faith and fair dealing, has looked to the decisional law of California for guidance. *See, e.g., Nicholson v. United Pacific Ins. Co.,* 710 P.2d at 1347–1348; *Story v. City of Bozeman,* 791 P.2d at 776. This court may justifiably place particular significance upon developments in the decisional law of California in predicting how the Montana Supreme Court will define the parameters of the implied covenant of good faith and fair dealing in the commercial setting.

7. In *Corenswet, Inc. v. Amana Refrigeration, Inc.,* 594 F.2d 129 (5th Cir.1979), the court, interpreting Iowa law, acknowledged that a distributor's rights with respect to termination extended only to the right to notice. 594 F.2d 129. The court impliedly suggested that a termination provision which provided a specific peri-

ed, the sophistication of the contracting parties weighs heavy in the determination of whether an express notice provision should be considered unconscionable. *See, Fleischmann Distilling Corp. v. Distillers Co.,* 395 F.Supp. 221 (S.D.N.Y.1975) (sixty-day notice provision held not to be unconscionable).

In *Premier Wine & Spirits v. E. & J. Gallo Winery,* 644 F.Supp. 1431 (E.D.Cal. 1986), the court had occasion to assess the viability, under California law, of the precise position advocated by Pennington in the case at bar. Under scrutiny in that case was the termination provision of a wine distributorship agreement essentially identical to the provision in the distributorship agreement extant between Pennington and Brown–Forman. The provision provided: "This agreement ... may be terminated as to all or any products by either party's giving thirty (30) days' advance written notice to the other party." 644 F.Supp. at 1434. In seeking compensation for the defendant's termination of the distributorship agreement, the plaintiff contended, *inter alia,* that the provision permitting termination by either party upon thirty days' notice was unconscionable and, hence, unenforceable. The court, however, concluded that the termination provision was not unconscionable. 644 F.Supp. at 1441.[8]

Pennington does not present any evidence which establishes that the termination provision was the result of surprise or oppression. While Pennington emphasizes the fact that the net worth of Brown–

Forman was extremely large in comparison to that of Pennington's, Brown–Forman's financial situation, standing alone, does not constitute oppression, especially where the claimant neither voiced an objection nor sought to negotiate the terms of the provision. *See, Premier Wine & Spirits v. E. & J. Gallo Winery,* 644 F.Supp. at 1440. Likewise, the termination provision cannot be said to be substantively unconscionable since it provided both parties to the agreement the same right to terminate without cause on thirty days' notice. *See, Premier Wine & Spirits v. E. & J. Gallo Winery,* 644 F.Supp. at 1438. Because the termination provision cannot be considered unconscionable, the express terms of that provision cannot be altered, but are enforceable as agreed to by the two experienced business entities.

The conclusion that the good faith obligation implied in every commercial contract should not generally be viewed as overriding an express contract term would logically flow from the nature of the obligation itself, as defined by *Story:* "Each party to a contract has a justifiable expectation the other will act in a reasonable manner in its performance or efficient breach." 791 P.2d at 775. Where the parties to a contract have expressly agreed to the terms of a notice provision, the provision must be presumed, in the first instance, to be reasonable. A showing of unconscionability would, in the court's opinion, be a prerequisite, under Montana law, to a finding that the notification provision is invalid. Pennington has failed, however, to present evi-

---

od of notice may be challenged as unconscionable. 594 F.2d at 139. The logic of the court's conclusion is compelling.

However, this conclusion is of little solace to Pennington, since there exists no indication that the thirty-day notice requirement of the distributorship agreement is considered commercially unreasonable *per se. See, e.g., Monarch Beverage Co. v. Tyfield Importers, Inc.,* 823 F.2d 1187 (7th Cir.1987).

**8.** The court recognized that under California law, a claim of unconscionability requires proof of two elements: (1) an absence of meaningful choice by one party and (2) contract terms which are unreasonably favorable to the other party. 644 F.Supp. at 1440, *citing, A & M Produce Co. v. FMC Corp.,* 135 Cal.App.3d 473, 485–

86, 186 Cal.Rptr. 114 (1982). It proceeded to find, however, that the first element was lacking because there existed no evidence of oppression or surprise. In fact, the plaintiff was aware of the provision and did not object or seek to negotiate. Moreover, an alternate product line was available to the plaintiff. 644 F.Supp. at 1440. With respect to the element of surprise, the court concluded, as a matter of law, that the element was lacking since the termination provision was not "hidden in a prolex printed form drafted by the party seeking to enforce the disputed forms." 644 F.Supp. at 1440. Finally, the court found the termination provision was not substantively unconscionable, because the agreement did not unreasonably grant one party the right to terminate without cause on thirty days' notice. 644 F.Supp. at 1440.

dence sufficient to establish that the notice provision was unconscionable and thereby sustain its burden under Fed.R.Civ.P. 56.

Therefore, for the reasons set forth herein,

IT IS HEREBY ORDERED that the motion of the defendant, Brown–Forman Corporation, requesting the court to enter summary judgment in that entity's favor, pursuant to Fed.R.Civ.P. 56, be, and the same hereby is, GRANTED.

The Clerk of Court shall immediately notify the parties as to the entry of the present order.