No. 92-375

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

LUMBER ENTERPRISES, INC.,
a Montana corporation,

      Plaintiff, Respondent and Cross-Appellant,

v.

DUANE F. HANSEN and PEGGY HANSEN,
d/b/a MODEL LOG HOMES,

      Defendants, Appellants and Cross-Respondents.

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

            Marcelle C. Quist, Quist Law Office,
Bozeman, Montana

      For Respondent:

            John H. Tarlow, Landoe, Brown, Planalp & Braaksma,
P.C., Bozeman, Montana

FILED

FEB 11 1993

Filed:

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs: January 8, 1993

Decided: February 11, 1993

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

This is an action for breach of contract. The District Court for the Eighteenth Judicial District, Gallatin County, granted judgment to Lumber Enterprises, Inc., in the amount of $45,460.50 plus interest and costs. Duane F. Hansen and Peggy Hansen appeal. Lumber Enterprises, Inc., cross-appeals. We affirm.

The issues are:

1. Did the District Court abuse its discretion in application of § 30-2-309, MCA?

2. Should the court have awarded prejudgment interest to Lumber Enterprises, Inc.?

Lumber Enterprises, Inc., is a Montana corporation with its principal place of business at Gallatin Gateway, Montana. It sells specially prepared logs for log homes through a network of dealers. Duane F. Hansen and his wife Peggy Hansen do business as Heartbilt Homes (formerly Model Log Homes) in Stockton, Illinois, as a dealer of Lumber Enterprises' products.

The parties have had a working relationship since 1972. On October 29, 1985, at the request of the Hansens, the parties agreed to a special pricing arrangement for approximately thirty loads of logs to be delivered in January, February and March of 1986. Lumber Enterprises agreed to the reduced price to keep its crews busy during the winter months.

2

The thirty loads were delivered but, at the request of the Hansens, over a much longer period of time than originally agreed. The last load was shipped on October 31, 1988. The price of the last twelve of the thirty loads is the subject of this lawsuit.

On April 27, 1987, Lumber Enterprises issued a new price list to the Hansens and told them to "take it or leave it." The practical effect was to raise prices to the Hansens by about 50 percent. After the April 1987 price change, the Hansens ordered twelve loads of logs to complete the thirty-load agreement of October 1985. They paid for the first nine of those twelve loads at the new 1987 prices, but under protest. Mr. Hansen testified he told the office manager for Lumber Enterprises that eventually there would have to be a reconciliation of the 1987 prices. The Hansens did not make payment for the last three loads, contending that this was the only way to force Lumber Enterprises to deal with their concerns.

Lumber Enterprises brought suit claiming $45,460.50 was due from the Hansens for logs, catalogs, trusses and insulation, using the 1987 prices. The Hansens contended the twelve disputed loads should have been billed at 1985 prices. They further contended that Lumber Enterprises owed them $859 as part of a professional photography bill; a credit of $9,827.55 for half logs billed as full logs; and a $500 credit for help in photographing and assembling new company catalogues. By the Hansens' calculations, Lumber Enterprises owed them money.

3

After trial, the District Court concluded that because of the long history of amicable dealings between the parties, neither party saw the need to have a formal written contract. It concluded that the Hansens would expect to deal with Lumber Enterprises in the future, because of the specialized nature of the product. The court concluded that the parties, by their conduct, allowed the shipments agreed to in the October 1985 negotiations to extend past the express terms of the contract and that the practical effect of the contract between the parties and their modifications of that contract was to transform the relationship into a contract calling for successive performances but indefinite in duration. The court concluded that § 30-2-309, MCA, applied:

**Absence of specific time provisions -- notice of termination.** (1) The time for shipment or delivery or any other action under a contract if not provided in this chapter or agreed upon shall be a reasonable time.

(2) Where the contract provides for successive performances but is indefinite in duration it is valid for a reasonable time but unless otherwise agreed may be terminated at any time by either party.

(3) Termination of a contract by one party except on the happening of an agreed event requires that reasonable notification be received by the other party and an agreement dispensing with notification is invalid if its operation would be unconscionable.

The court further concluded that the unilateral announcement of new prices by Lumber Enterprises on April 27, 1987, did not satisfy the requirement under § 30-2-309(3), MCA, of reasonable notice. Taking into account the long history of dealings between

4

the parties, the court deemed that thirty days' notice would be reasonable before Lumber Enterprises changed its prices.

For purposes of calculating damages, the court allowed the parties to supplement the evidence to show how many loads of logs were ordered by the Hansens during the thirty-day period beginning April 27, 1987. The parties stipulated that no loads were ordered during that period. The court then ruled that the Hansens owe Lumber Enterprises $45,460.50, plus costs of suit. The court denied the credits sought by the Hansens for photography and half logs, the damages sought by the Hansens for breach of good faith and consequential damages, and the request of Lumber Enterprises for attorney fees.

The Hansens appeal and Lumber Enterprises cross-appeals.

I

Did the District Court abuse its discretion in application of § 30-2-309, MCA?

The Hansens claim the April 27, 1987 price increase by Lumber Enterprises was a unilateral modification of a term of the contract, not a termination of the contract. They assert that the attempted modification of the contract was not made in good faith and that the original contract should be enforced. They claim the remedy should have been the one for modification of contract in the absence of good faith.

5

The test of good faith as to merchants includes observance of reasonable commercial standards of fair dealing in the trade. This

> may in some situations require an objectively demonstrable reason for seeking a modification. But such matters as a market shift which makes performance come to involve a loss may provide such a reason even though there is no such unforeseen difficulty as would make out a legal excuse from performance under Sections 30-2-615 and 30-2-616.

Official Comment to § 30-2-209, MCA.

A Lumber Enterprises manager testified that the April 27, 1987 price increase was necessary "[b]ecause we were losing money at the 1985 price agreement." He testified that when the original agreement was entered, Lumber Enterprises had never before sold truckloads of logs without the usual trim work done on them, and they believed the price was proper. However, after a year of supplying the Hansens with such logs, they realized they were selling the logs at a price below the cost of production. We conclude that the test of good faith has been met.

More importantly, the Hansens ignore that the contract had already been extended indefinitely, with the acquiescence of both parties, at the time of the April 27, 1987 price increase. The indefinite extension placed the contract within § 30-2-309(2), MCA, in that "the contract provides for successive performances but is indefinite in duration." Under that statute, termination is allowed "at any time by either party" in such a contract.

The Hansens contend that the contract between the parties was never terminated, so that § 30-2-309(3), MCA, does not apply. Termination is defined at § 30-2-106(3), MCA, as "when either party pursuant to a power created by agreement or law puts an end to the contract otherwise than for its breach." As stated above, § 30-2-309(2), MCA, provides that either party has the power, at any time, to terminate a contract for successive performances but indefinite in duration. We conclude that when Lumber Enterprises unilaterally raised its prices, it had the power to, and did, put an end to the previous contract between the parties.

Section 30-2-309(3), MCA, provides that a party is entitled to "reasonable notification" before a contract is terminated. The statute leaves to the finder of fact the determination of what is "reasonable notification." Here, the contract between the parties originally called for the purchase of approximately thirty loads of logs during a three-month period. The time was extended for over a year, at the Hansens' request, before Lumber Enterprises changed its prices. We conclude that, in this case, the court did not abuse its discretion in adopting thirty days' notice as reasonable and in determining that the Hansens were entitled to the original contract price only on additional loads of logs purchased during that amount of time.

In buying loads of logs more than thirty days after the unilateral price increase, the Hansens effectively entered into a

7

new contract with Lumber Enterprises. Lumber Enterprises brought this suit to collect on the unpaid debt under that contract.

We hold that the District Court did not abuse its discretion in application of § 30-2-309, MCA.

II

Should the court have awarded prejudgment interest to Lumber Enterprises, Inc.?

One of the reasons the District Court denied the request of Lumber Enterprises for prejudgment interest was that Lumber Enterprises did not file a brief in support of its motion to amend the findings to allow the award of prejudgment interest. The filing of a supporting brief is required by Uniform District Court Rule 2(b):

> [F]ailure to file a Brief within five days [of the filing of a motion] by the moving party shall be deemed an admission that the motion is without merit.

By failing to abide by this rule, Lumber Enterprises admitted at the trial court level that its motion for the award of prejudgment interest was without merit. As a result, it waived its right to bring a request to this Court to award such interest. We therefore will not consider this issue.

Affirmed.

_____
                Chief Justice

8

We concur:

_John Conway Harrison_

_P. C. McDonough_

_Jim Trieweiler_

_Karla M. Gray_
Justices