33 F.3d 58
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
HOUSE OF STUART, INC., d/b/a Stuart's House of Vacuums; C.
Dan Stuart, President, Plaintiffs-Appellees,
v.
WHIRLPOOL CORPORATION, d/b/a Whirlpool, Defendant-Appellant.
 No. 93-35587.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 4, 1994.
Decided Aug. 15, 1994.
 
 Before: ALARCON, BEEZER AND KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Whirlpool Corporation ("Whirlpool") appeals the district court's denial of its motions for judgment as a matter of law ("JNOV") and for a new trial pursuant to Fed.R.Civ.P. 50(b) and 59, respectively. It contends that there was insufficient evidence to support the jury verdicts as to House of Stuart's claims for tortious breach of the implied covenant of good faith and fair dealing, constructive fraud and negligent misrepresentation. Whirlpool also challenges the resulting compensatory and punitive damages awards as excessive and contrary to law. The district court had jurisdiction pursuant to 28 U.S.C. Sec. 1332(a)(1). We have jurisdiction pursuant to 28 U.S.C. Sec. 1291. Because there was insufficient evidence to sustain the jury's verdict on any of the theories presented by Stuart, we reverse the denial of JNOV and enter judgment for Whirlpool.
 
 
 3
 * We review de novo the denial of a motion for JNOV. Erickson v. Pierce County, 960 F.2d 801, 804 (9th Cir.1992). Denial of JNOV is inappropriate when it is clear that the evidence and its inferences cannot reasonably support judgment in favor of the opposing party. Pierce v. Southern Pacific Transp. Co., 823 F.2d 1366, 1369 (9th Cir.1987). To preserve a challenge to the sufficiency of the evidence, the movant must request a directed verdict at the close of all of the evidence at trial. Farley Transp. Co. v. Santa Fe Transp. Co., 786 F.2d 1342, 1347 (9th Cir.1985).
 
 II
 
 4
 Whirlpool contends that the district court erroneously denied its motion for JNOV as to Stuart's claim for tortious breach of the implied covenant of good faith and fair dealing. Relying on Lumber Enterprises, Inc. v. Hansen, 846 P.2d 1046, 1049-50 (Mont.1993), and Pennington's Inc. v. Brown-Forman Corp., 785 F.Supp. 1412, 1413-14 (D.Mont.1991), it argues that any construction of its distributorship agreement with Stuart rendered the relationship terminable at will and that the termination of an at will contract cannot as a matter of Montana law constitute a breach of the implied covenant of good faith and fair dealing. Whirlpool also contends that, in any event, it had objective good cause for the termination: to wit, the interim losses incurred by Whirlpool on its upright.
 
 
 5
 As a preliminary matter, it is unclear whether the Montana Supreme Court would adopt the position, taken by the district court in Pennington's, 785 F.Supp. at 1413, that the termination of a clearly and unambiguously terminable at will contract cannot as a matter of law constitute a claim for bad faith termination. We do not reach this question, nor do we directly address Whirlpool's contentions because Stuart expressly disavowed damages on a contract theory of recovery at trial. The action for breach of the implied covenant as presented to the jury sounded only in tort. In the seminal case of Story v. City of Bozeman, the Montana Supreme Court determined that a party may be liable in tort for breach of the implied covenant only when the parties are involved in a "special relationship." 791 P.2d 767, 775 (Mont.1990). Recovery in tort requires that substantial evidence support each and every one of the following factors:
 
 
 6
 (1) the contract must be such that the parties are in inherently unequal bargaining positions; [and] (2) the motivation for entering the contract must be a non-profit motivation ...; [and] (3) ordinary contract damages are not adequate because (a) they do not require the party in the superior position to account for its actions, and (b) they do not make the injured party 'whole'; [and] (4) one party is especially vulnerable because of the type of harm it may suffer ...; and (5) the other party is aware of this vulnerability.
 
 
 7
 Id. at 776 (following Wallis v. Superior Court, 160 Cal.App.3d 1109, 1116-19 (1984)) (internal quotations omitted). When there is no substantial evidence as to one or more of these factors, there is no "special relationship" as a matter of law. Id.
 
 
 8
 None of the evidence introduced by Stuart at trial supports the proposition that a "special relationship" within the meaning of Story existed between these parties. Specifically, there was no evidence even remotely suggesting that Stuart entered into the contract for a nonprofit motive. This evidentiary failure is fatal to Stuart's claim for tortious breach of the implied covenant of good faith and fair dealing. See Story, 791 P.2d at 776; First Security Bank & Trust v. UZ Ranch, 807 P.2d 1341, 1345 (Mont.1991); Winchell v. United States Dept. of Agric., 961 F.2d 1442, 1444 (9th Cir.1992).
 
 III
 
 9
 Whirlpool also challenges the district court's denial of its motion for JNOV as to Stuart's negligent misrepresentation and constructive fraud claims. It argues that the constructive fraud claim fails as a matter of law because Whirlpool had no duty to disclose its planning objectives to Stuart. Whirlpool also contends that there was insufficient evidence that it misrepresented material facts. Whirlpool also argues that both claims fail because there was insufficient evidence that Stuart detrimentally relied on, or suffered prejudice, as a result of its conduct.
 
 
 10
 Constructive fraud requires a "breach of duty which without fraudulent intent gains an advantage to the person in fault ... by misleading another to his prejudice...." Kitchen Krafters, Inc. v. Eastside Bank, 789 P.2d 567, 572 (Mont.1990). Absent a fiduciary relationship, a duty to disclose arises only when there are "special circumstances," such as when the party in fault creates a false or misleading impression in the first instance. Drilcon v. Roil Energy Corp., 749 P.2d 1058, 1062 (Mont.1988). A claim for negligent misrepresentation requires proof of a false representation as to a past or existing material fact, of the absence of a reasonable ground for believing the representation to be true, of an intent to induce the plaintiff to rely on the representation and of the plaintiff's justifiable and detrimental reliance on the representation. Kitchen Krafters, 789 P.2d at 573. The plaintiff must, in any event, sustain damages before an action will lie. Bottrell v. American Bank, 773 P.2d 694, 705-06 (Mont.1989).
 
 
 11
 As a preliminary matter, there is substantial, albeit conflicting, evidence that Whirlpool misrepresented material facts to Stuart. At trial, Stuart established that proposals to terminate the Whirlpool-brand line were being circulated and reservations were being expressed about Whirlpool's engineering capacity prior to July 1986, when Whirlpool assured Stuart of a continuing relationship. Even if Whirlpool was not under a duty to disclose its objectives to Stuart from the outset, moreover, it came under such a duty after it assured Stuart of a continuing relationship. See Drilcon, 749 P.2d at 1062.
 
 
 12
 There is no evidence, however, that Stuart was prejudiced by Whirlpool's failure to disclose information or that he detrimentally relied on any of its representations.[1] With regard to the extent of his reliance, Dan Stuart testified only that he bought a van, hired an additional salesman and began developing a distribution network. All of these measures were undertaken prior to the assurances he received in July 1986, negating any causal link between Whirlpool's conduct and potential reliance-based damages.[2] Moreover, even if Whirlpool were under a duty to disclose its planning objectives to Stuart from the outset, Stuart admitted that the venture was profitable, negating that fact that he suffered any reliance-based financial damages. See Bottrell, 773 P.2d at 706. He presented no evidence of any foregone business opportunities or of other reliance-based damages incurred as a result of Whirlpool's conduct. The only possible prejudice to Stuart arising from Whirlpool's conduct related to the termination of a favorable exclusive contract and to the costs associated with the termination itself. These damages were prospective and would have been incurred regardless of Whirlpool's representations or its failure to disclose its objectives.
 
 IV
 
 13
 We deny Stuart's motion to strike portions of Whirlpool's excerpt of record and its opening brief. Even if the submission of the Shavell and Polinsky affidavits were untimely, Whirlpool was never permitted to submit any additional briefing regarding the propriety of punitive damages. Stuart's contention that Whirlpool submitted the affidavits for the improper purpose of "padding" the record for appellate review is frivolous.
 
 V
 
 14
 We reverse the district court's denial of JNOV as to Stuart's claims for tortious breach of the implied covenant of good faith and fair dealing, negligent misrepresentation and constructive fraud. We consequently vacate the resulting award of compensatory and punitive damages.
 
 
 15
 REVERSED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Stuart's contention that this argument was not preserved for appeal is without merit. Although it did not specifically argue that there was no evidence of reliance per se during its motion for a directed verdict at the close of evidence, Whirlpool argued that the evidence was insufficient across the board as to both of these claims. This was an adequate articulation of the basis for JNOV as we have never required greater specificity. See, e.g., Farley, 786 F.2d at 1347
 
 
 [2]
 Stuart cannot plausibly argue that these measures were taken in the reasonable reliance of a long-term relationship based on the reference in the August 1985 form letter to Whirlpool's desire to be "partners in all aspects." Such a position is intrinsically implausible as it is contrary to the initial distributorship agreement which, as Dan Stuart admitted, provided only for a one-year duration