SCIRICA, Circuit Judge,
concurring in part and dissenting in part.
I respectfully dissent from part III of the majority opinion because I believe the district court correctly entered summary judgment on Ideal’s contract, implied covenant of good faith, and tortious interference with contract claims.
I.
The Ideal-Tuscan relationship spanned seven years from 1985 to 1992. Its terms were memorialized in a written contract (the “1985 Contract”) that did not specify a term of duration and did not provide for notice of termination or any other termination procedure. From almost the beginning of the relationship, Tuscan did not comply with the pricing provisions of the 1985 Contract. From 1987 onwards, Ideal repeatedly complained to Tuscan about price increases and asserted that Tuscan’s prices were not in accordance with the 1985 Contract. But Tuscan’s management consistently refused to adjust invoice prices in response to Ideal’s complaints, and Tuscan told Ideal it could take its business elsewhere if it wanted. Nevertheless, Ideal continued to order products from Tuscan at invoice prices for five more years.
On the basis of these undisputed facts, the district court granted summary judgment to the defendants. Opinion, Ideal Dairy Farms, Inc. v. John Labatt Ltd. et al., No. 92-2469 (D.N.J. May 11, 1995). It held that the 1985 Contract was an at-will contract governed by the New Jersey Uniform Commercial Code, and, because the contract was at-will, “[it] was terminated [as a matter of law] by the departure in 1987 from the pricing terms set forth [therein]” Id. at 23. The majority disagrees with the district court’s legal analysis. It concludes that factual issues remain as to when Tuscan terminated the 1985 Contract, and believes that Tuscan may have breached the 1985 Contract continuously over a three to five year period.
II.
The 1985 Contract specified no term. Under the New Jersey Uniform Commercial Code, a contract of indefinite duration “is valid for a reasonable time,” but “may be terminated at any time by either party.” N.J. Stat. Ann. § 12A:2-309(2). “Termination of a contract by one party ... requires that reasonable notification be received by the other party.” N.J. Stat. Ann. § 12A:2-309(3).[1]
The majority concludes that Tuscan may not have terminated the 1985 Contract until •late 1990, when members of Tuscan management informed Ideal that the contract was “meaningless” and “not valid.” See Majority Opinion at 745. Under this interpretation, it would appear that an at-will contract cannot be terminated under § 12A:2-309(3) unless notification is express. I disagree. A party’s conduct may also terminate an at-will contract. See Lumber Enterprises, Inc. v. Hansen, 257 Mont. 11, 846 P.2d 1046, 1049-50 (1993) (“when [the seller] unilaterally raised its prices, it ... put an end to the previous contract between the parties”); Mi *752 chael Halebian N.J., Inc. v. Roppe Rubber Corp., 718 F.Supp. 348, 365 (D.N.J.1989) (under U.C.C. § 2-309, refusal to continue to supply goods in accordance with the terms of an at-will contract terminates the contract, not breaches it). Termination through conduct may not provide the reasonable notice required by § 12A:2-309(3), but failure to give reasonable notice does not mean the contract continues ad infinitum. Rather the aggrieved party is entitled to damages arising from the failure to give reasonable notice. See Ronald A. Anderson, Uniform Commercial Code § 2-309:27 at 555 (1982) (“When a contract is terminable at any time on notice and it is terminated without notice, the damages which the aggrieved party may recover are limited to those sustained during the notice period.”).
In this case, Tuscan’s pricing diverged from the contractual provision in 1987 at the latest. Ideal knew it was being charged a greater amount than that called for by the contract and repeatedly complained. In response, Tuscan clearly demonstrated — both by refusing to change its pricing and through specific statements- — -that it would not comply with the 1985 Contract. Therefore the contract was terminated at that time. While Tuscan failed to provide Ideal with reasonable notification of termination, its consistent refusal to abide by the terms of the contract terminated the contract. Cf. Agway v. Ernst, 394 A.2d 774 (Maine 1978) (where buyer was unaware of changes in price made by seller, at-will contract was breached and not terminated). Ideal could have recovered damages for Tuscan’s failure to provide reasonable notification, but it filed suit after the statute of limitations had run. I would affirm the district court’s entry of summary judgment on Ideal’s claim for breach of contract.
III.
Because Ideal’s implied covenant of good faith and tortious interference with contract claims derive from its contract claim, I would grant summary judgment on those claims as well.
IV.
For the foregoing reasons, I respectfully dissent.

. In relevant part, § 12A:2-309 provides:
12A:2-309. Absence of Specific Time Provisions; Notice of Termination
(2) Where the contract provides for successive performances but is indefinite in duration it is valid for a reasonable time but unless otherwise agreed may be terminated at any time by either party.
(3) Termination of a contract by one party except on the happening of an agreed event requires that reasonable notification be received by the other party and an agreement dispensing with notification is invalid if its operation would be unconscionable.